## Mogg, Trustee v. Farley.

(Decided October 14, 1924.)

## Appeal from Warren Circuit Court.

1. Removal of Causes—If One Defendant is Resident, Other Defendants, Nonresidents, are Not Entitled to Removal.—If one of defendants is resident of state, other defendants, although nonresidents, are not entitled to removal of cause to federal court, assuming all are properly made defendants.

2. Removal of Causes—Whether Case Removable Determinable from Allegations of Plaintiff's Petition.—Whether case is removable to federal court must be determined from allegations of plaintiff's petition where there is no charge of fraudulent joinder.

3. Removal of Causes—Resident Defendant Held Necessary Party, and Other Defendants Not Entitled to Removal.—In action to recover balance of purchase price due on sale of lease and to enforce lien for purchase money by sale of lease, resident defendant, who under contract had right to conveyance from plaintiff of one-half of property upon performance of contract, was a necessary party, so that nonresident defendants were not entitled to removal to federal court.

4. Mines and Minerals—Sale of Lease Held Only Sale of Interest Owned by Seller, which Purchaser Could Not Avoid Because Lessor had Reserved Royalty.—Sale of "undivided one-half interest in the T. S. oil and gas mining lease," held only sale of interest of seller, and seller's title was not defective, in that owner of land reserved one-eighth of oil as royalty, lease being of record, and it being incumbent on purchaser to learn what seller's rights were before buying, in absence of any representation on subject.

5. Contracts—Courts Look to Language Employed, Subject-Matter, and Surrounding Circumstances.—In construction of contracts, courts look to language employed, subject-matter, and surrounding circumstances, and are entitled to place themselves in same situation as parties who made contract so as to view circumstances as they viewed them, and so as to judge meaning of words and ascertain correct application of language to things described.

6. Contracts—General or Indefinite Terms Explained or Restricted as to Meaning by Surrounding Circumstances.—In construing contracts, general or indefinite terms employed may be explained or restricted by viewing them in light of circumstances surrounding parties to contract.

7. Mines and Minerals—Sales of Lease Held Subject to Contract with Pipe Line.—Sale of lease held subject to seller's contract with pipe line company, notwithstanding agreement in assignment by seller to discharge liens or contract entered into by seller and save buyer harmless, in view of other provisions.

8. Mines and Minerals—Buyers Not Standing Upon Objection to Defects in Abstract Cannot Complain that they were Not Cured.—Buyers of oil lease not standing upon objections to technical de-

fects in abstract of title, and refusing to pay purchase price unless contract with pipe line company was canceled, giving seller no opportunity to cure defects in abstract, cannot complain that these defects were not cured.

CHARLES E. HENDERSON and THOMAS, THOMAS & LOGAN for appellants.

CHANEY & DIXON and RODES & HARLIN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Affirming.

Appellee, A. D. Farley, brought this action in equity. She resided in Warren county. The defendants to the action were M. E. Mogg, trustee, and M. E. Mogg personally, C. S. Craig, Walter A. French and the Citizens' National Bank of Bowling Green. Mogg and Craig resided at Indianapolis, Indiana; W. A. French at Bowling Green. Mogg and Craig filed their petition and bond to remove the case to the United States district court. The court overruled the motion to remove, and this is the first question raised on the appeal. The rule is that if one of the defendants is a resident of the state, the other defendants, although non-residents of the state, are not entitled to remove the case. Of course this rule applies only to those who are properly made defendants to the action. The rule is also that the question whether the case is removable or not must be determined from the allegations of the plaintiff's petition, where there is no charge of fraudulent joinder. It is not maintained that the Citizens' National Bank of Bowling Green was a necessary party to the action. The case turns on whether Walter A. French was, and this must be determined from the allegations of the petition, as there is no allegation of fraudulent joinder.

The plaintiff alleges in her petition that on April 11, 1922, she entered into a contract with M. E. Mogg, trustee, for himself and the defendant C. S. Craig and with Walter A. French, by which she agreed to sell and they agreed to purchase from her what is known as the Tutt-Stovall lease in Warren county, Kentucky, which covered 55.35 acres of land for $51,500.00; that at the time the contract was made she and the defendant Mogg, trustee, entered into a memorandum of agreement which only partially covered the contract between the parties and called for one-half interest in said Stovall lease,

which she agreed to convey to said Mogg, and she agreed to transfer the other half interest to Walter A. French; that on April 19, 1922, Mogg, trustee, C. S. Craig and Walter A. French presented to this plaintiff a second contract for her signature, stating to her that they desired to change the terms of payment; that this contract provided for the sale and purchase of only an undivided one-half interest in the Tutt-Stovall lease, when according to the true contract between the parties she was selling to the said Mogg, trustee, and the said Walter A. French the entire working interest in said lease, but was to convey one-half interest in same to said Walter A. French for himself and the said M. E. Mogg; that pursuant to the contract she had executed and placed in the hands of the Citizens' National Bank of Bowling Green in escrow, an assignment to M. E. Mogg, trustee, for a one-half interest in the said Tutt-Stovall lease, and also an assignment in escrow executed by the plaintiff for the other one-half interest in said Tutt-Stovall lease, to be held by the bank for the plaintiff and the said Walter A. French, acting for himself and the said M. E. Mogg, and to be delivered to the said Walter A. French or his order when the terms and conditions of the escrow contract had been complied with, and with instructions to the bank to deliver the assignment to said French or his order if the contract was complied with, and if it was not complied with, to be returned to her. By the terms of the contract $1,000.00 was paid on April 11th, $9,000.00 on April 19th, $15,000.00 on May 15th; $15,000.00 more was to be paid on or before June 15th and $11,500.00, the remainder of the contract price for the lease, on or before July 15, 1922. The last two payments were not made and the plaintiff alleged that the defendants had defaulted on the contract. She prayed judgment, among other things, for the balance due under the contract, $26,500.00, with interest, and the enforcement of her lien upon the property.

Plainly Walter A. French was a necessary party to the action, for under the writings which the plaintiff had signed and delivered to the bank he had a right to a conveyance from her of one-half the property upon the performance of the contract, and he had a right to be heard on the question whether there had been a default in the performance of the contract. His rights would not be affected by any judgment in an action in which he was not before the court. The plaintiff could not enforce her lien for the purchase money and sell the property so as

to pass a title to the purchaser without French being before the court. As he was a necessary party to the action and no proper relief could be granted to the plaintiff unless he was before the court, the nonresident defendants were not entitled to remove the case and the motion to remove was properly overruled. Bryan v. Barriger, 251 Fed. 328; Stone v. South Carolina, 117 U. S. 430; C. & O. v. Banks' Admr., 144 Ky. 137; I. C. R. R. v. Sheegog, 126 Ky. 252.

After the motion to remove the case was overruled the issues were made up; the property, by consent of parties, was placed in the hands of a receiver and on final hearing the circuit court entered a judgment in favor of the plaintiff directing a sale of the property for the balance of the purchase money due her, $26,500.00. She bought the property at the sale for less than her debt; the sale was confirmed. The defendants appeal.

Under the Tutt Stovall lease the owner of the land reserved as a royalty one-eighth of the oil. It is earnestly insisted that appellee did not have a perfect title, in that this royalty was reserved and she did not therefore own all the oil. But the thing she sold and the buyers bought as specified in the first clause of the writing was "the undivided one-half interest in the Tutt Stovall oil and gas mining lease." All that the seller sold was her rights under this lease. The royalty reserved by the owner of the land was an interest in the land, which he did not convey by the lease and still retained. The lease was of record; there is neither allegation nor proof of any misrepresentation, and on the face of the paper the contract must be held a sale simply of the rights of the lessee under the lease. It was incumbent on the purchaser to learn what these rights were before buying in the absence of any representations from her on the subject.

A year before this sale was made appellant had made a contract with the Indian Refining Company by which the Indian Refining Company piped away and sold the oil and accounted to her for the market price, less thirty-two cents per barrel. Before the contract of sale was made this contract with the pipe line was discussed and the purchasers were plainly told that the contract must stand and be carried out. They made the purchase with full notice of the contract. In the contract made April 11th, when this discussion was had, these words were inserted: "The said A. D. Farley agrees to furnish a

merchantable title to said lease and clear the property of all debts upon the completion of the above payments.''

At that time there was a well not completed, for which a lien would exist on the property in favor of the workmen when it was finished. This was talked over before this clause was inserted in the contract. In the contract of April 19th it was recited that $9,000.00 should be paid on that day instead of $4,000.00 as recited in the contract of April 11th. When the contract of April 19th was produced to her, appellee was told by appellants that they were doing better by her than in the original contract, and her attention was not called to any other substantial change in the contract of April 11th. She, however, read the paper carefully before signing it. That contract, among other things, contained these words:

> ''The said seller agrees to immediately furnish an abstract showing a merchantable title to said lease and pay and discharge any and all liens of any and every character whatsoever now on said lease or any liens placed thereon or contract entered into by said seller and shall at all times hold and save harmless the said buyer or said corporation to be formed from any and all liability of any and every kind whatsoever created by said seller.''

After the purchasers had paid $25,000.00 of the purchase money they demanded that appellee should remove from the property the obligation of the pipe line contract or secure a revocation of that contract and refused to pay anything further until this was done. She thereupon brought this suit.

One of the fundamental rules in the construction of contracts in this:

> ''Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described. It is therefore an established canon of construction that in order to arrive at the

intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into.   General or indefinite terms employed in the contract may be thus explained or restricted as to their meaning and application.   And the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made.''   6 R. C. L. 849.

In determining the meaning of the words ''contract entered into by said seller'' in the clause quoted above, the court must look not only to this clause of the contract but to the entire contract and the situation of the parties when the contract was made.  The immediately preceding clause of the contract provides: ''Upon the execution of this contract all of the oil runs from said wells shall be payable to the order of the buyer, or a corporation hereafter to be formed and deposited  when and as collected from the purchaser of such oil in the Citizens' National Bank of Bowling Green, Kentucky.''   The oil runs from said wells were in the pipe lines of the Indian Refining Company under the contract between it and appellee, made more than a year before.   When the parties contracted with reference to these oil runs, their contract must be construed in the light of the circumstances of the parties.   The only oil runs they had a right to were the oil runs in the pipe line of the Indian Refining Company, and when the contract provided how this money should be paid the terms of the contract must be referred to the money coming from this pipe line contract, for that was the only way in which there were any oil runs at that time.

The contract was made by the buyers after an examination of the property and with full knowledge of how the oil was being taken away.   Under such circumstances the contract that all of the oil runs from said wells shall be paid in a certain way, is necessarily a contract that the oil runs from the pipe line of the Indian Refining Company should be so paid.   This being the proper construction of the contract, taken as a whole, appellants cannot complain that appellee did not secure a cancellation of the contract with the Indian Refining Company after the sale to appellants was made.   This contract was drawn by the attorney for the purchasers; it was presented by them to the appellee for signature. It means what they had a right to expect her to under-

stand it to mean under the circumstances. They had discussed with her that she should pay for the completion of the well and she naturally understood the word "contract" in connection with the word "liens" to refer to this. It would be a strained and unnatural construction of the writing to hold that the word "contract" referred to the oil runs which the contract expressly provided for in the preceding section.

It is also urged that there were some technical defects in the abstract of title which appellee furnished, in that it failed to show that in certain instances the grantors were all heirs of the decedent. But appellants did not stand upon this objection; they refused to pay unless the contract with the Indian Refining Company was cancelled, and they gave appellee no opportunity to cure the defects in the abstract, if any there were. They cannot complain now that these defects were not cured when they based their refusal to carry out the contract on another ground.

On the whole case we see no error in the proceedings substantially to the prejudice of appellants.

Judgment affirmed.