## Lincoln Nat. Life Ins. Co. v. Means.

(Decided June 2, 1936.)

CLYDE J. COVER and WILLIAM MARSHALL BULLITT, LEO T. WOLFORD, and BRUCE & BULLITT for appellant.

GROVER C. SALES and SELLIGMAN, GOLDSMITH, EVERHART & GREENBAUM for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

From a judgment in favor of Harriet O. Means, beneficiary of a life insurance policy, against the Lincoln National Life Insurance Company, this appeal is prosecuted.

The Equitable Life & Casualty Insurance Company, a domestic corporation, was empowered by its articles of incorporation to write, execute, and issue, as principal, policies of life insurance. It was licensed so to do by the insurance commissioner of the commonwealth of Kentucky. It employed and authorized agents to solicit applications for health and life insurance. It was unable to fulfill the requirements of

section 648, Kentucky Statutes, concerning the deposit
of securities, as therein required. On account of this
disability the insurance commissioner declined to per-
mit it to engage in the business for which it was or-
ganized, unless and until it contracted with another
life insurance company, ready, able, and willing to com-
ply with section 631 et seq.

To qualify it to comply with the demands of the
insurance commissioner, its representative in the spring
of 1930, at Fort Wayne, Ind., the home office of the
Lincoln National Life Insurance Company, approached
the president of the latter for the purpose of making
some arrangements with it, whereby the Equitable
"could go ahead and issue contracts and thus get into
the life insurance business." The representative of
the Equitable and the vice president of the Lincoln
National made "a verbal, tentative, re-insurance agree-
ment" which was later reduced to writing, forwarded
to the Equitable, and by it signed and submitted to the
insurance commissioner of Kentucky for his approval.
He declined to approve it on the ground it was merely
a contract binding the Lincoln National as a reinsurer.
The Equitable's representative went back to the office
of the Lincoln National at Ft. Wayne and report-
ed his refusal to approve the "re-insurance contract,"
and informed its vice president that the insurance
commissioner would not let the Equitable "get into
the life insurance business in any way, save by co-
insuring the business by some good reliable company,
taking the full risk and carrying the full reserves of the
policies." Thereupon, the Lincoln National agreed it
would coinsure with the Equitable and "take the full
risk and carry the full reserves of the policies"; and
directed the representative of the Equitable to return
to Kentucky and have the Equitable to proceed to en-
gage in business as a health and life insurance com-
pany, issuing policies in its name, representing to those
who sought to make application for health and life in-
surance that the Lincoln National was a coinsurer,
though the policy was issued in the name of the Equit-
able. Accordingly, a written contract was prepared
and signed by the Lincoln National, setting out elabor-
ately the conditions, terms, and provisions by which
the Lincoln National obligated itself to become, as here

claimed, a coinsurer with the Equitable. On receiving it, it was signed by the Equitable, presented to, and approved by, the insurance commissioner. At the time the provisions of the contract were agreed on by the Equitable and the Lincoln National, the Equitable's form of application for life insurance was gone over. It was then changed to conform to the Lincoln National's application form for life insurance, and it was agreed that it was to be headed "Equitable Life." Thereafter, the Equitable actively engaged in this state in the business of life insurance, in accordance with, and pursuant to, its and the Lincoln National's contract. It required all written applications for insurance, inspections, and physical examinations of the applicants to be sent to the Lincoln National for its approval or rejection. It provided that where the application was approved by the Lincoln National and a policy issued thereon by the Equitable, "the consideration to be paid the Lincoln National for disability coinsurance" was the premium which the Equitable charged the insured less a commission of 75 per cent. the first year, and 10 per cent., the renewal years. The Equitable was to retain a commission, and pay medical examiner's fees and all charges incurred in connection with its life policies, out of the premiums received from policy-holders, and pay the balance to the Lincoln National.

The contract contains this article:

"The Lincoln shall be liable to the Insurer for the benefits covered by reinsurance hereunder in the same manner in all respects and to the same extent as the Insurer is liable to the Insured for such benefits and all reinsurance shall be subject to the terms and conditions of the respective form of Policy under which the Insurer shall be liable.

"Whenever a claim is made under an Insurer's policy which has been reinsured hereunder, it shall be taken and considered by the Lincoln to be a claim for the amount of reinsurance on such risk. If the Lincoln is carrying the entire liability involved in the claim, the Insurer shall submit all papers in connection with such claim to the Lincoln for its authorization before making payment and the Lincoln shall pay the amount of reinsur-

ance covered by the policy of reinsurance when the insurer shall settle with the claimant.

"Any suit or claim may be contested or compromised on the part of the Insurer and in case of a reduction of the claim made upon the Insurer, the Lincoln and the Insurer shall participate in such reduction in proportion to their respective net liabilities and any expense incurred by the Insurer in defending or investigating any claim shall be shared in the same proportion.

"In every case of loss, the proof thereof accepted as satisfactory by the Insurer shall likewise be taken as sufficient by the Lincoln and copies thereof, together with an affidavit showing the amount paid on such claim by the Insurer, duly certified to by the President, Vice-President, or Secretary of the Insurer, shall be furnished to the Lincoln before payment shall be demanded of it."

Article 10 states that "the agreement shall take effect from the —— day of —— month, 1930, and shall be unlimited as to its duration, but may be terminated at any time by either party giving three months notice of termination in writing." The contract is dated the 25th day of May, 1931.

As soon as the Equitable and the Lincoln National by and through their officers verbally agreed on the conditions, terms, and provisions of the contract, thereafter to be reduced to writing, signed and presented to the insurance commissioner for his approval, the solicitors and agents of the Equitable began to solicit applications for life insurance to be issued in the name of the Equitable, in accordance with the contract. When soliciting and accepting applications, the solicitors of the Equitable were directed to, and did, make known to the applicants for health and life insurance, that the application was in the name of the Equitable; the policy would be issued in its name, and if the application were accepted by the Lincoln National, it would be a coinsurer with the Equitable. The applicant was examined by the Equitable's medical examiner, the application approved by it, and then forwarded to the Lincoln National for its approval or rejection. Wherever the application was approved by the Lincoln

National, the policy of the Equitable was issued and delivered by it to the insured; the premium paid by the assured, and the Lincoln National's per cent. thereof transmitted by the Equitable to the Lincoln National, accepted by it, with which to carry the full reserves of the policies.

For a premium of $114.24, paid in accordance with the Equitable's and the Lincoln National's contract, on the 2d day of March, 1931, a policy in the name of the Equitable was issued and delivered by it to Ray M. Means, insuring his life in the sum of $3,000 and naming Harriet O. Means, the beneficiary. The policy carried a disability benefit clause which is not here involved. The payment of the premium according to the requirements of the policy, the disability and death of Ray M. Means, and the furnishing of proof thereof to the Equitable are not now disputed.

At the date of the Equitable's and the Lincoln National's contract, and of the issuance of the policy to Means, the home office of the Equitable and the residence of Means were in Louisville, Jefferson county, Ky. In March, 1933, the Equitable was placed in the hands of a receiver. Means died on the 17th day of September, 1933, a resident of Louisville, leaving the beneficiary surviving, residing in the city of Louisville.

The Lincoln National in 1925, had complied with section 631 et seq., and engaged thereunder in the life insurance business in this commonwealth from 1925 to some time in 1927. In complying therewith, on or about October 16, 1925, it filed with the insurance commissioner of Kentucky, a resolution adopted by its board of directors, consenting that the insurance commissioner of this commonwealth "shall be duly authorized and empowered to acknowledge service of process for and in behalf of said company, in all cases as provided by the laws of the state of Kentucky, so long as said company may have any policy in force in Kentucky, and for one year thereafter." It further consented that in case of its withdrawal from Kentucky, or the revocation of its authority to do business in this state, the insurance commissioner "shall still be duly authorized and empowered to acknowledge service of process," and it thereby agreed to waive "all right and privilege

to revoke this authority and power granted to the insurance commissioner of the state of Kentucky to acknowledge service of process.''

Harriet O. Means, the designated beneficiary, instituted this action in the Jefferson circuit court against the Lincoln National to recover of it on the Equitable's policy, $3,000, the sum named in it, and payable to her in the event of Ray M. Means' death while the policy was in full force and effect.

The summons was served on the insurance commissioner in accordance with the quoted provisions of the resolution of the board of directors of the Lincoln National. It is here insisting that the trial court erred in overruling its motion to quash the service of this summons. It also contends that neither Ray M. Means nor Harriet O. Means was a party to its and the Equitable's contract, and that it is not a party to the Equitble's policy issued to Means; and, therefore, Harriet O. Means is without right to maintain this action against it on the policy. It vigorously contends that its and the Equitable's contract was, and is, a contract of reinsurance, and that this fact deprives her of the right to sue and recover on the Equitable's policy. The Equitable's receiver asked to be made a party to the action. The trial court refused to permit its pleading to be filed and denied it the privilege of becoming a party. Of this the Lincoln National complains.

Elaborate briefs present and discuss many questions of law and cite a host of cases in support of the parties' respective contentions. We have carefully examined them and considered the contentions of the parties on each point to sustain which they are cited; but it is impractical to attempt in this opinion to state more than our general conclusions on the decisive, determinative issues.

Adverting to the ruling of the court on the motion to quash the return of the summons, the essence of the contention of the Lincoln National respecting it, is that the service of the summons on the insurance commissioner was invalid because the Lincoln National had suspended business and withdrawn from Kentucky in 1927, and this fact operated to revoke its consent to a service of summons, under the resolution of its board

of directors, filed in 1925 with the insurance commissioner. It should be observed that its making of a defense, taking and prosecuting this appeal, does not deprive it of the right to still insist on the error, if any, in the trial court's adverse ruling on the motion. Subsection 6, section 51, Civil Code of Practice; Rush v. Childers, 209 Ky. 119, 272 S. W. 404.

The filing of the resolution of its board of directors under section 631, Kentucky Statutes, consenting that the service of process upon an agent of the company in this state or upon the insurance commissioner, was a condition precedent to the Lincoln National's right to commence business in this state. Without its complying with this statute, it could not legally engage in this state under its and the Equitable's contract.

It should be conceded that in the execution of its and the Equitable's contract and its delivery in this state to the Equitable for its signature and presentation to the insurance commissioner for his approval, and thereafter carrying it out as therein provided, the Lincoln National was engaging in business in this state, within the generally accepted meaning of this term. It was not ignorant of section 631 and its requirement in this respect, nor were the Equitable and the insurance commissioner at the time the contract was presented to the latter for his approval.

It is a fair and reasonable presumption that both the Loncoln National and the insurance commissioner, at the time he approved its and the Equitable's contract, respectively considered its consent for the commissioner to be its process agent as authorized by the resolution of its board of directors, though filed in 1925, was continuing, and in effect, during the life of the corporation, until and unless revoked in some manner, other than by the suspension of business and the withdrawal of its agent and officers in 1927, and for this reason the insurance commissioner did not exact that it, and it did not, prepare and file with him a new or another resolution of its board of directors as required by section 631. Any other thought imputes to the Lincoln National the indefensible motive of approbating the board of director's resolution so long as it received a benefit and reprobating it, if, and when, the benefit ceased.

The inevitable conclusion of an unbiased mind is that the Lincoln National and the insurance commissioner considered the resolution of the board of directors then on file in his office evidence of a continuing consent to a service of process as therein stated, and that section 631 did not require a new resolution of the board of directors consenting to the service of summons in actions arising out of the business to be engaged in by the Lincoln National in this state, in virtue of its and the Equitable's contract, and for this reason none other than that of 1925 was filed. This construction of its and the insurance commissioner's action in respect of the resolution is consonant with, and authorized by, section 631. It is our conclusion that the facts bearing on this question fully sustain the ruling of the trial court. And those developed on the trial of the other issues, substantiate this conclusion.

The Lincoln National, because of the proven facts, cannot invoke the fundamental principle that no one shall be condemned unheard or compelled to answer a complaint in a foreign jurisdiction except upon notice of the proceeding to escape herein the service of process and the jurisdiction of the court.

The factual distinction between the present case and those cited by the Lincoln National opposing the ruling of the court on the motion to quash the return of the summons, brings this one as to this question, within the principles stated in Connecticut Mut. Life Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. Ed. 569; Collier v. Mutual Reserve Fund Life Ass'n (C. C.) 119 F. 617; Hill et al. v. Empire State-Idaho Mining & Dev. Co. (C. C.) 156 F. 797; Bankers' Surety Co. v. Town of Holly (C. C. A.) 219 F. 96; R. J. Frazier v. Steel & Tube Co. of America, 101 W. Va. 327, 132 S. E. 723, 45 A. L. R. 1442.

We are not impressed with the argument that Harriet O. Means, the beneficiary of the Equitable's policy, is without right to sue thereon and recover of the Lincoln National. However, a consideration and disposition of this question requires an interpretation and a construction of the Lincoln National's and the Equitable's contract, and a determination whether it is technically a ''re-insurance'' or a ''co-insurance'' contract, as it concerns Means' policy.

The Lincoln National stresses the title or name of the contract, and its frequent use of the word "re-insurance." It is perfectly proper to give consideration to both the title or its name, and to its repeated use of the term "re-insurance"; but neither is conclusive. Leslie County v. Maggard, 212 Ky. 354, 279 S. W. 335; Goodrich v. City National Bank & Trust Co. of Battle Creek, 270 Mich. 222, 258 N. W. 253; Vautrain v. Neel (La. App.) 163 So. 555. The contract must be construed as a whole so as to ascertain and give effect to the true intent of the parties as therein expressed, and, by it, determine their rights thereunder as well as the rights of third parties, if any, for whose benefit it was entered into. The legal distinction between the terms "re-insurance" and "co-insurance" is so clearly defined and generally known it is unnecessary to define and differentiate them.

According to the universally accepted rules of interpretation and construction of a written instrument, we must look to and consider all of the language employed in the Lincoln National's and Equitable's contract, as well as the subject-matter with which it deals, in the light of the circumstances, accompanying the parties at its execution. General or indefinite terms, or words used in it may thus be explained, simplified, or restricted as to their meaning and application. And it must be so construed as to give it such effect, and none other, as the parties to it intended at the time it was made. To this extent only is parol evidence admissible. Ware v. Allen, 128 U. S. 590, 9 S. Ct. 174, 32 L. Ed. 563; Burke v. Dulaney, 153 U. S. 228, 14 S. Ct. 816, 38 L. Ed. 698; McCaffrey v. Mitchell (Colo.) 56 P. (2d) 926; Mogg v. Farley, 205 Ky. 25, 265 S. W. 449; Holliday v. Sphar, 262 Ky. 45, 89 S. W. (2d) 327; Matthews v. LaPrade, 130 Va. 408, 107 S. E. 795; Williamson v. American Insurance Union (Ill. App.) 1 N. E. (2d) 541.

Applying these rules to the language of the contract itself, and giving heed to the subject-matter and the circumstances surrounding the parties at the time of its making, there is scarcely room for cavil or doubt, that it was entered into to bind the Lincoln National as a "co-insurer" with the Equitable as to any policyholder to whom a policy was issued by the Equitable.

"In fact, in any case where the contract of insurance is more than a mere contract of indemnity and is made for the benefit of policy-holders of the re-insured and by it the re-insurer assumes the liability of the latter upon its policies, the liability of the re-insurer may be directly enforced by the insured or his privies."

Vol. 8 Couch on Insurance, sec. 2276, p. 7434. To sustain this quoted statement, Couch cites cases from eighteen jurisdictions. A like statement is iterated in Vol. 7, Cooley's Briefs on Insurance, p. 6758. He cites a number of cases to sustain it, including Barnes v. Hekla Fire Ins. Co., 56 Minn. 38, 57 N. W. 314, 45 Am. St. Rep. 438; E. D. Baird & Son v. Kaskaskia Live Stock Ins. Co., 198 Iowa, 905, 200 N. W. 575, and Johannes v. Phœnix Ins. Co., 66 Wis. 50, 27 N. W. 414, 57 Am. Rep. 249.

It is our further conclusion that if it, in its provisions, is insufficient to constitute strictly a "con-insurance" contract, within the usual meaning of the term, plainly it is within the rule stated by Couch and Cooley. Either construction brings it within the rule that upon making a contract for the benefit of a third party, privity between a promisor and a third party beneficiary, necessary to be a binding legal obligation, is created by operation of law, notwithstanding the fact that the primary purpose of the contracting parties was to benefit themselves; and that the third party beneficiary was unaware of the contract at the time of its execution. For a statement and application of this principle, see Calder v. Richardson (D. C.) 11 F. Supp. 948; Standard Oil Co. of Newark, N. J. v. National Surety Co., 234 Ky. 764, 29 S. W. (2d) 29; Chesapeake & O. R. Co. v. Wadsworth Elec. Mfg. Co., 234 Ky. 645, 29 S. W. (2d) 650; Klenokole Mining Co. v. Lusk, 245 Ky. 73, 53 S. W. (2d) 168; J. T. Jackson Lumber Co. v. Union Transfer & Storage Co., 246 Ky. 653, 55 S. W. (2d) 670; North Western Mutual Life Ins. Co. v. Eddleman, 247 Ky. 116, 56 S. W. (2d) 561, 87 A. L. R. 276; Consolidated Realty Co. v. Richmond Hotel & Building Co., 253 Ky. 463, 69 S. W. (2d) 985, and Rosa v. Nava, 235 Ky. 574, 575, 31 S. W. (2d) 910.

The contract imposed on the Lincoln National and the Equitable, the obligations of coinsurers, though

Means' policy was in the name of the Equitable. Therefore, under section 27, Civil Code of Practice, the beneficiary, Harriet O. Means, was privileged to sue thereon and recover of either or both the Lincoln National and the Equitable. This being true, it follows the trial court properly declined to permit the Equitable's receiver to become a party to the action.

The judgment of the choncellor being consistent with our views, it is affirmed.