**OHIO FUEL GAS CO v LEWIS, et**

Common Pleas Court, Belmont Co

Decided August 8, 1939

Robert E. Scott, St. Clairsville, and Walker & Walker, St. Clairsville, for plaintiff.

W. O. Chappell, St. Clairsville, and Thornburg & Lewis, St. Clairsville, for defendants.

## OPINION

By BELT, J.

This cause was submitted to the Court on the amended petition of plaintiff, the answer and cross petition of the defendant, the answer of plaintiff to said cross petition, and the agreed statement of facts.

The amended petition of plaintiff alleges that it is an Ohio corporation; that the defendant, The Barnesville Development Company, is an Ohio corporation and that both plaintiff and said defendant are engaged in the business of producing, buying and selling gas at various places in the State of Ohio; that on or about December 2nd, 1929, plaintiff entered into a written agreement with A. C. Peters and others whereby the said A. C. Peters and others agreed to and did sell all of the gas that might be produced from property described in the petition, held by them under lease, to the plaintiff; that the plaintiff connected its lines with the producing gas wells of said parties, took the gas therefrom and has been in possession of said wells and lease since said time; that on or about the 21st day of December, 1938, the defendants entered into said land and forcibly disconnected the lines of plaintiff from said gas wells and connected the lines of the defendant, The Barnesville Development Company, thereto, well knowing at the time of the contract hereinbefore mentioned and of the ownership of plaintiff of said gas; that the said Barnesville Development Company has been removing gas from said wells since that date and will continue to do so unless restrained by an order of this Court, all to the damage of plaintiff, for which it has no adequate remedy at law. The prayer is for injunction and for an accounting.

The defendants, by way of answer, admit the corporate capacity of plaintiff and of the defendant, The Barnesville Development Company, and admit that said company is engaged in producing, buying and selling gas in Ohio; admit that on or about the 2nd day of December, 1929, plaintiff entered into a written agreement with A. C. Peters and others and that a copy of said agreement is attached to the petition; admit that since the 21st day of December, 1938, said defendant company has from time to time purchased gas from the producing wells on said lease, and subject to said admissions deny

the other allegations of the amended petition.

By way of cross petition, defendants say that on the 25th day of May, 1938, a suit was filed in this Court in which one J. L. Jefferis was plaintiff and A. C. Peters, J. S. Patterson, Herbert McCort and George McCort doing business as McCort Brothers, Hazel Wells and M. J. Purdy were defendants; that the prayer of said petition was for the partition of that certain leasehold described in plaintiff's petition; that on the 28th day of September, 1928, this Court ordered said leasehold sold at public auction in said partition proceeding, and pursuant to said order of sale the same was sold to the defendant, Robert Lewis, agent, for the sum of $2000.00, he being the highest and best bidder therefor; that said sale was duly confirmed and a deed executed and delivered by the Sheriff of this County for said leasehold property, whereupon defendant Lewis, as agent, entered into possession of same. The defendants further say that plaintiff and defendants in said partition case at the time of said sale were the only persons interested in said leasehold and that by virtue of said sale Robert Lewis, as agent, became the sole and exclusive owner thereof and of all interest therein; that plaintiff claiming some interest, the defendants pray that the title of the defendant Lewis to said leasehold be quieted and plaintiff's claim be decreed to be void.

By way of answer, plaintiff denies generally the allegations of the cross petition and particularly the claim that defendant Lewis, as agent, became the sole and exclusive owner of said leasehold estate.

It appears from the exhibits attached to and made a part of the agreed statement of facts that A. C. Peters and others were the owners of a certian oil and gas lease on forty acres of land in Somerset Township, this County, by virtue of which lease said parties were granted the right to drill for and produce oil and gas from said premises; that the said leasehold was partitioned and purchased by the defendant Lewis; that prior to the filing of said partition proceedings and on December 2nd, 1929, the then owners of said oil and gas lease on which there was a well producing gas entered into an agreement with the plaintiff for the sale of the gas thereafter produced from said well and from any other well or wells thereafter drilled on said property which should produce gas. The said owners were parties of the first part in said agreement and plaintiff the party of the second part. Said agreement provides:

"That the said parties of the first part for and in consideration of the covenants on the part of the party of the second part to be paid, kept and performed as hereinafter set forth, have sold, and by these presents do hereby sell unto the said party of the second part, and said party of the second part has bought and does hereby agree to take during the continuance of this contract **all of the natural gas that may be produced by the parties of the first part from those certain lands now held and operated, or about to be operated,** by the first party * * * "

This is followed by a description of the property. The agreement further provides as follows:

"The first parties also grant unto the second party such rights of entry, use and occupation of the surface of said lands for the purpose of this contract as are vested in the first parties; not, however, to the exclusion of the parties of the first part. In consideration of which and other covenants made to be faithfully kept and performed by each party to the other as herein set forth, said parties mutually covenant and agree as follows:

"1. This contract shall go into effect upon the day of execution and delivery and the marketing of gas shall begin

as soon after same has been produced on above lands as the work of laying pipe lines and setting meter shall be completed and all rights hereunder shall continue for a term of three years after the day of its execution and delivery and so long thereafter as gas is produced in paying and marketable quantities from the lands herein described. If at any time during the term of this contract, the natural production and delivery of gas into second party's line shall be less than 10 thousand cubic feet per day for a period of thirty consecutive days, the second party may remove the meter temporarily, until gas is again produced in paying and marketable quantities.

"2. All necessary gathering lines and fittings to connect any producing gas well on said lands shall be furnished, constructed, and promptly put into operation by the parties of the first part. All drips and devices that may be found necessary to separate any fluids from the gas in said gathering lines, also a gas heater of a design to be approved by second party, to bring the gas delivered to the proper temperature, shall be installed and operated by the parties of the first part and the party of the second part shall also have access to the said drips, devices and heater, with the right to operate the same if necessary, but without assuming the duty to do so.

"3. It is understood, however, that the said gas is sold and is to be taken in its natural state, without the previous extraction of any valuable substance and at the natural pressure of the gas flowing from said well into second party's line, against the varying pressure from time to time maintained therein and where after its measurement it may be commingled with whatever gas the party of the second part may be from time to time marketing and transporting through its lines."

The agreement further provides in substance that while the second party shall take the gas from said wells in the six winter months from November 1st to May 1st at the full flow from the wells, yet in the summer months it shall not be required to take more than one-third of the total volume, with a further provision for partially closing the well gates. The agreement further provides that the meter and other fixtures and structures necessary to protect the same shall be furnished and installed by the party of the second part at a location to be mutually agreed upon on said property. The contract further provides for equal freedom of access to the premises by both parties. Payments are to be made for said gas delivered at the rate of fifteen cents per thousand cubic foot monthly. This contract is exclusive and the first party agrees not to dispose of any of the gas from said lands to any other company or person. It is further provided that all lines and fittings furnished under the contract shall remain the property of the party furnishing the same and may be removed by such party at the termination of said contract. It is further provided that all covenants, conditions and obligations of said agreement shall extend to and be binding upon the successers and assigns, respectively, of the parties. Said agreement was executed by the parties of the first part and acknowledged by them but the same was not recorded.

The plaintiff was not made a party in said partition proceedings.

The agreed statement of facts, in addition, to the admissions made in the pleadings and in addition to the facts already mentioned in this opinion, sets out that the plaintiff, after the execution of said agreement, installed a gas meter on the lands in question near the boundary line thereof and connected its meter with its main pipe line which was installed near said lands; that gathering lines were installed by the owners of said leasehold connecting the gas wells on said premises with the said meter; that the gathering lines remained connected with the meter until the 21st day of December, 1938, and that during the period of time from the connection of said meter and the line to the 21st day of December, 1938, the said owners produced natural

gas from said premises which was from time to time purchased by the plaintiff. Copies of the pleadings and entries in said partition proceeding are made a part of the agreed statement of facts. It is further agreed that at the time of the filing of said partition proceeding and since said date defendant Lewis has been and is now the president and chief executive officer of the defendant, The Barnesville Development Company. It is further agreed that the said defendant Lewis had knowledge that gas was being produced from the wells on said leasehold estate and that the gas produced therefrom was being purchased by the plaintiff but that the said Robert Lewis at and before the time of said sale did not have knowledge of the nature of the arrangements between the plaintiff and the owners of said leasehold estate for the sale of said gas and did not know whether or not the arrangement between the parties was in writing or oral. That after the purchase of said property by defendant Lewis he notified the Ohio Fuel Gas Company that he had purchased the same and requested plaintiff to disconnect its pipe lines from the gathering lines serving the wells on said leasehold and that upon plaintiff's failure so to do he disconnected the same and connected such gathering lines with the defendant, The Barnesville Development Company's lines, and since which he has sold the gas produced from said wells to said defendant, The Barnesville Development Company. It is further stipulated that The Barnesville Development Company is not now and never has been the owner of said leasehold. It is further stipulated that plaintiff has at all times objected to the sale of the gas from said premises to the defendant, Development Company.

From the issue thus raised, one of the questions presented is whether or not plaintiff has the legal right to the gas produced from said wells during the life of its agreement and after the sale in partition, and, second, whether or not the defendant Lewis is entitled to a decree quieting his title to said leasehold property. The first question that

arises is whether or not the right of partition existed, which may determine in part the rights of the defendant Lewis.

Sec. 12026, GC, provides as follows:

"Tenants in common and coparceners of any estate in lands, tenements or hereditaments within the State may be compelled to make or suffer partition thereof in the manner hereinafter described."

"A lease or interest for oil and gas with the usual rights and appurtenances necessary to the development of the lands and the production of such oil and gas is partitionable either under the statute or, as in this case, in equity."—Black et v Sylvania Producing Co., 105 Oh St 346.

The above decision is in line with the holdings of the Courts generally that a lease containing a permit to drill for and produce oil and gas is a lease for an interest in realty, the oil and gas being minerals and a part of the realty until produced, when such product loses its realty character and becomes personal property.

Was the agreement in question between the owners of said lease and plaintiff a contract wherein an interest in real estate was granted? If it was, then the interest therein of plaintiff would not be divested by a failure to make plaintiff a party to said partition proceedings, provided the purchaser had notice of plaintiff's interest or such a situation was present as to warrant the application of the doctrine of caveat emptor. The Court is of the opinion that such a state of facts existed as would warrant the application of said doctrine, provided there is a further finding that the agreement in question granted an interest in real estate. On the other hand, if the agreement was a contract pertaining only to personal property and no rights, corporeal or incorporeal, were granted in and to the real estate, it would be unnecessary to make plaintiff a party thereto. A further question is presented

and that is, if the finding is that the agreement pertained only to personalty would it be enforcible as against the purchaser, the defendant Lewis herein, under the state of facts presented. An examination of these questions is indicated.

"An agreement by a lessee or royalty owner to sell oil or gas production to a pipe line company is not an assignment or transfer of the lease or royalty interest but merely a contract to sell oil or gas produced from the land for the period of time stated in the contract." —Summers Oil and Gas, Volume 4, Sec. 761, page 198.

There is a citation applying to this text of the case of Hogg v Magnolia Petroleum Co., 267 S. W. 842. A reading of the above case illustrates the changing character of oil and gas, oil and gas in place in the ground being real estate but when severed from the realty, like timber severed from the land, becomes personal property

"The sale of real estate in a partition proceeding under order of the Court is a judicial sale and a bona fide purchaser at such sale is within the protection of the provisions of §8543, GC."

"The rule of caveat emptor applicable to judicial sale does not charge the purchaser at such sale with knowledge of the existence of an instrument conveying the real estate or a part thereof where the instrument has not been recorded or filed for record in the office of the recorder and where the holder of same has taken no step to put one on notice of its existence." Wier et v The Snyder Saw Mill Co., 88 Oh St 424.

"A transferee or assignee of a lease or royalty interest is bound by the agreement of his transferor or assignor to sell the production to a pipe line purchaser."—Summers Oil and Gas, Vol. 4, Sec. 761, page 198.

A number of cases have been cited in connection with the above quoted text from that work on oil and gas, some of which will be now noticed.

"Where a pipe line company's suit to enjoin defendant from violating the contract whereby defendant's vendor agreed to sell to plaintiff all the oil produced on the leasehold and to secure a mandatory injunction requiring defendant to deliver to plaintiff the oil covered by the contracts, instead of selling same to third persons or otherwise disposing of same, it appeared that plaintiff and the vendor had a plain, complete and adequate remedy at law and could easily establish their damage in a court of law."—Simms v Southern Pipe Line Co., 195 S. W. 283.

The second proposition of the syllabus in the above case is to the effect that where one purchases an oil lease with knowledge that his vendor has contracted that the oil produced on the property shall be sold and delivered to a pipe line company at a price named in the sale contract, he is bound by such contract.

It appears in that case, however, that after the sale of the property was made the purchaser adopted the contract with the pipe line company and permitted said company to take the oil for some length of time. It further appears that there was an express agreement by and between the seller and purchaser of the property that the said sale and purchase was to be made subject to the sales contract of the oil and that the contract was only repudiated by the purchaser when the market price of oil became greater than that quoted in the contract. Under this state of facts the same case is not presented as in the case at bar.

See also: Noble Oil & Gas Co. v Altex Petroleum Co., 230 S. W. 758.

"A purchaser of an oil and gas lease with full notice of the vendor's contract to sell all the gas produced from oil wells on the land to another and

permit the latter to erect, operate and maintain all materials, equipment and structures necessary for performance, held bound by vendor's covenants; the contract imposing a servitude in the nature of an incorporeal hereditament enforcible according to the parties' intention, whether a covenant running with the land or not, against subsequent purchasers with notice, whether named in the instrument or not, and notwithstanding want of privity of estate."—Graham v Omar Gasoline Co., 253 S. W. 896.

In the above case the contract was an exhibit of record and the defendant had notice thereof. Injunction was denied for the reason that the Court held that the plaintiff had an adequate remedy at law.

The case of Mogg et v Farley, a Kentucky case, found in 265 S. W. 449, is of interest here. It was held in that case that the sale of a lease was subject to seller's contract with pipe line company notwithstanding an agreement and assignment by seller to discharge liens on contract entered into by seller and save buyer harmless. In that case it was held that the purchaser was bound by the contract with the pipe line company, but the facts disclose that before the sale was made the contract with the pipe line company was discussed and the purchasers were told that the contract must stand and be carried out. The Court say:

"Courts in the construction of contracts look to the language employed, the subject matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed and accordingly they are entitled to place themselves in the same situation as the parties who made the contract so as to view the circumstances as they viewed them and so as to judge of the meaning of the words and of the correct application of the language to the things described."

The Court further say:

"In determining the meaning of the words 'contract entered into by the said seller' in the clause quoted above, the Court may look not only to that clause of the contract but to the entire contract and the situation of the parties when the contract was made."

"The oil runs from said wells were in the pipe lines of the Indian Refining Company under the contract between it and appellee made more than a year before. When the parties contracted with reference to these oil runs their contract must be construed in the light of the circumstances of the parties. The only oil runs they had a right to were oil runs in the pipe lines of the Indian Refining Company, and when a contract provides how this money should be paid the terms of the contract must be referred to the money coming from this pipe line company for that was the only way in which there were any oil runs at that time."

A digest of all the cases under the above cited text discloses that in some of the cases an injunction was refused because there was an adequate remedy at law, and in the other cases where it was held, that the transferee was bound by the agreement of his transferor to sell the product under an existing contract, the transferee not only had notice of the contract and its terms but also had contracted to be bound thereby.

This situation is not unlike standing timber contracts. Suppose a purchaser of standing timber under a valid contract therefor entered into an agreement in writing with A to sell said timber after the same had been cut, A to enter upon the land and remove the timber. If after half of the standing timber was cut and removed by A the purchaser should sell and convey the remainder of the standing timber to B, B knowing that so much of said timber as had been already cut had been sold to A but having no notice of a contract

for the sale of the whole of said timber after it was cut, it could hardly be said, as a mater of law, that B would be bound by his grantor's contract, even though A had the right under his contract to enter upon the land for the purpose of removing said timber.

There are two cases in Ohio which we believe illustrate this proposition. One is the case of **Lithgow v Shook**, found in **39 Weekly Law Bulletin at page 39**, which case was affirmed by the Supreme Court without opinion on December 7th, 1897, found in **57 Oh St 662**, the affirmation being on the authority of **Hirth v Graham, 50 Oh St 57**, and **Clark v Guest, 54 Oh St 298**. Both of the cited cases are timber cases. In the Lithgow case the defendant in error was the owner of a small tract of land in Monroe County, this State, in what is known as the "Sistersville Oil Field", and entered into a verbal contract with plaintiff in error whereby he agreed to lease his land for oil and gas purposes and sold to plaintiff in error, to be delivered to the tanks and pipe lines, one-sixteenth of all the oil that could be produced from said land, the purchaser to have no possession, interest, control or ownership of said oil until delivered in tank and pipe line. The purchaser agreed to pay the sum of $250.00, $5.00 in cash, which was then paid, and $245.00 as soon as the lands were leased for oil and gas and he had notice thereof. The defendant leased said land to an oil company and plaintiff learning of said lease tendered to defendant the balance of said sum which he refused to accept. The action was for specific performance. The Court sustained a demurrer to the petition. was affirmed by the Circuit Court, and it affirmed by the Supreme Court, all the Courts holding that it was a contract concerning an interest in land and required to be in writing.

It will be noted that the agreement was for the purchase of one-sixteenth of all the oil that could be produced from said land.

The other case is the case cited by defendants in their brief, **Newburg Petroleum Co v Weare, 44 Oh St 604**. In that case Weare owned certain oil producing lands subject to unexpired terms of leases to the Newburg Petroleum Company. Said company released and quit claimed to Weare all its right, title and interest in such lands without reservation and put Weare in possession. In part consideration for this conveyance Weare covenanted and agreed with the company to pay and deliver to said company, its successors and assigns, upon the leased premises the one-sixth part of all the oil and other mineral substances produced or pumped thereon or therefrom daily during the remainder of the terms granted in the lease. This conveyance and agreement was duly recorded and on the same day Weare sold and conveyed to other parties all his interest in the different parts of said lands and put his grantees into possession. Said grantees produced large quantities of oil from the land but Weare and his grantees refused to account to Newburg Petroleum Company for such products or to pay or deliver the sixth part of oil and other minerals as agreed to by Weare. Said company brought its action against Weare and his grantees on the agreement and sought to hold the grantees liable for the covenants of Weare. A demurrer was filed to the petition and it was held that such agreement is personal to Weare and did not run with the land so as to bind the grantees of Weare for his failure to perform.

It will be noted that the two cases are distinguished in this: that in the Lithgow case the sale was of all the oil that could be produced and said oil was then undiscovered and undeveloped and that was held to be a sale of realty and the agreement inoperative, while in the Newburg Petroleum case the sale was for the one-sixth part of all the oil and other mineral substances produced or pumped. It was held that this contract was personal to Weare on the theory, evidently, that the contract pertained to personal property.

It will be noted that in the agreement between plaintiff and the owners

of the lease in the case at bar that the contract was for the sale and purchase of all the natural gas that may be produced by the parties of the first part. It was not a contract for all the natural gas in and underlying said premises. The plaintiff had no right and assumed no obligation of producing or helping to produce said gas. If none was produced by the owners of the lease then the agreement was inoperative. In the Court's opinion, the agreement was for the purchase of personal property solely and the fact that the plaintiff had the right of access to the surface for the purpose of securing possession of said gas is unimportant and does not change the character of such contract.

It will also be noted that the contract in the case at bar was not between the parties and their heirs.

The finding of the Court is: first, that there is nothing in the pleadings or in the agreed statement of facts showing that the plaintiff does not have an adequate remedy at law for breach of contract; second, that said contract is not of or concerning real estate, corporeal or incorporeal, but personal to the parties themselves and that the plaintiff has no interest under and by virtue of said contract in the real estate in question. It necessarily follows that the injunction is denied and the petition dismissed and title of the defendant Lewis is quieted under the averments of his cross petition as against any claim of the plaintiff therein.