James W. SIMPSON, Movant,

v.

JOC COAL, INC., JOC Coal (Kentucky) Inc., Joc Oil Exploration Company, Inc., Hydrocarbon Industries, Ltd., and JOC Oil Company, S.A., Respondents.

Supreme Court of Kentucky.

Oct. 4, 1984.

Paul E. Braden, Corbin, for movant.

Phillip Lewis, Hyden, Gerald W. Simmons, Cincinnati, Ohio, for respondents.

LEIBSON, Justice.

Movant, James W. Simpson, a minority shareholder in Skyuka Mining Corporation, recovered judgment in Clay Circuit Court against respondents, the JOC Companies, for $907,603.92, representing the value of Simpson's twenty-three (23) shares of stock in Skyuka as determined by the trial judge. This value was determined by computing the price per share the JOC Companies had agreed to pay to the majority shareholders under an agreement dated September 12, 1975.

Simpson was the president of Skyuka Mining. On April 18, 1975, JOC Companies had purchased all of the assets and liabilities of Skyuka for a maximum price of $9,000,000, of which $4,750,000 was guaranteed as a minimum and the balance of $4,250,000 was contingent upon future production. $1,500,000 was paid down and the balance was to be paid in installments at various intervals, with the first payment due September 30, 1975. This balance was represented by a Promissory Note. The Promissory Note was Skyuka's sole asset. Skyuka was a "subchapter S" corporation for tax purposes, and any monetary benefits accruing to Skyuka passed through directly to its shareholders. Simpson received his proportionate share of the $1,500,000 paid up front, but has received no additional compensation.

Between April and September 1975, conditions in the coal market began to deteriorate. In addition, the JOC Companies began to complain about the assets they had purchased. They undertook renegotiations with the majority shareholders which culminated in the agreement of September 12, 1975, the effect of which was to buy out these shareholders and transfer controlling interest in Skyuka to the JOC Companies. These shareholders were paid $39,461.04 per share for sixty shares of stock, and agreed there would be no more "flow through" of "monetary benefits to the shareholders" from JOC Companies' note.

Simpson was not a party to the modification agreement. However, his interest was recognized:

"[T]he parties to this agreement acknowledge that two Shareholders named in the Agreement, namely James W. Simpson and [blank] are not parties to this agreement. It is, however, understood and agreed that the JOC Companies will undertake to conclude a similar

arrangement with James W. Simpson under which said James W. Simpson will also consent to a similar ammending [sic] of the Agreement."

This commitment is made somewhat ambiguous by the further statement that since Simpson "was not a party to the Purchase Agreement (another part of the package) ... the consideration for said Simpson's agreeing to such an ammendment [sic] of the Agreement will undoubtedly be based on some consideration which differs from the consideration specified in this agreement."

Another clause important to this transaction because it highlights the fact that Simpson had a substantial interest in the pass through of payments from JOC Companies to Skyuka which would terminate by reason of the agreement is the following:

"The JOC Companies agree to indemnify and hold the Shareholders named herein harmless from and against any and all claims, actions, damages or liabilities arising out of or by reason of said Shareholders entering into this agreement separate and apart from James W. Simpson."

Not surprisingly, JOC Companies made no further payments on the promissory note to Skyuka (except for bookkeeping entries in a Caribbean bank "without a physical transfer of cash"). The trial court found that "No good faith effort to negotiate with the plaintiff was ever made," a reasonable conclusion from the record.

Based on the agreement of September 12, 1975 and the testimony of record, the trial court also found that "by the same re-modified Agreement, the defendants agreed and obligated themselves, in consideration of the cancellation of the April Agreement, to enter a similar Agreement with the plaintiff, James W. Simpson." It concluded that:

"The defendants, are as a matter of law, jointly and severally liable to the plaintiff for the fair reasonable market value of his twenty-three (23) shares of stock in SKYUKA as a third party beneficiary of the September 12, 1975 Agreement. ...

He, Simpson, is legally empowered to enforce the beneficial portions of this Agreement; he was a contemplated and intended beneficiary."

■ On appeal the Court of Appeals decided that Simpson had "no enforceable third-party beneficiary rights" and reversed. The Court of Appeals concluded that he was merely an incidental and not an intended beneficiary of the September 12, 1975 Agreement, citing *Long v. Reiss*, 290 Ky. 198, 160 S.W.2d 668 (1942) and *Ball v. Cecil*, 285 Ky. 438, 148 S.W.2d 273 (1941) as authority for this conclusion. It further concluded that "The portion of the September 12 Agreement concerning Simpson appears to be, at best, an agreement to agree," unenforceable because too indefinite and uncertain in its terms, citing *Walker v. Keith*, Ky., 382 S.W.2d 198 (1964). We have concluded that the record supports the trial judge's findings and conclusions that Simpson was an intended third party beneficiary and that the contract obligation of JOC Companies is sufficiently definite and certain in its terms to be enforceable. The findings of the trial judge are controlling unless "clearly erroneous." *Largent v. Largent*, Ky., 643 S.W.2d 261, 263 (1982). For reasons that will be stated, the cases cited by the Court of Appeals are not applicable in present circumstances. We reverse the Court of Appeals and affirm the trial court on these issues.

■ The rule stated in both *Ball v. Cecil, supra,* and *Long v. Reiss, supra,* is:

"It is settled in this State, as well as most jurisdictions in America, that a third party for whose benefit a contract is made may maintain an action thereon; however, he must have been a party to the consideration or the contract must have been made for his benefit, and the mere fact that he will be incidentally benefited by the performance of the contract is not sufficient to entitle him to enforce it." 148 S.W.2d @ 274; 160 S.W.2d @ 673.

The *Long* opinion continues:

"[A] third person may enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. ... [I]t is not necessary that any consideration move from the third-party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party." 160 S.W.2d @ 673.

The *Long* opinion then discusses the exception to the "American Majority Rule," which is that "the mere fact that a third person would be incidentally benefited does not give him a right to sue for its breach." *Id.* at 673.

In *Long* the court would not enforce the contract because the intended beneficiary was, strictly speaking, a corporation which "was not then even in existence and did not come into existence until nearly two years after the contract was entered into...." *Id.* at 674. Furthermore, the "lower court found that the contract was too indefinite and uncertain in its terms to adequately inform it as to what specific character of corporation was by the contract proposed to be organized and that it was unable to frame a decree compelling its specific performance...." *Id.* In the present case the trial court reached the opposite conclusions. In both cases the question on appeal is whether its findings were clearly erroneous, and the appellate court has no power to substitute findings where they are not.

In the present case at the time the contract in question was entered into Simpson was not only very real, but, as a practical matter, impossible to ignore. Simpson points to the fact that under KRS 271A.005–.715, the "Kentucky Business Corporation Act," enacted in 1972, he was a shareholder with a "right to dissent" from the corporate transactions involved, and the right to sue "demanding payment for his shares" if his interests were not adequately protected in the arrangements that were being made. KRS 271A.395–.405. The majority shareholders and the JOC Companies, in striking their bargain, obviously recognized his interest not only by providing in the contract for JOC Companies to make Simpson a suitable offer, but also by providing in the contract that JOC Companies would "indemnify" and "hold ... harmless" the majority shareholder from all claims, causes of action and liabilities the shareholders could incur from "entering into this agreement separate and apart from James W. Simpson." It is hard to imagine a situation where an individual could be more of an intended beneficiary of the contract than Simpson was in these circumstances. It was necessary for the majority shareholders to provide for his interest or risk the legal consequences, and the method for so doing was expressed in the contract both in general terms and in some detail, though not in specified dollars and cents.

*Ball v. Cecil, supra,* is an even less likely candidate to support JOC Companies' position than *Long v. Reiss, supra.* It was a declaratory judgment action to determine whether an antenuptial contract long since vitiated by divorce created a remainder interest for a nephew in a farm conveyed by the contract. In finding the nephew an "incidental beneficiary" the court suggested the result would have been different if there was "any intention on the part of the promisee ... to obligate the promisor ... to make a gift to [the nephew] in consideration of her marrying Cecil." *Ball v. Cecil, supra* at 274. Here the trial court found that the promisees, majority shareholders, intended to bind JOC Companies "to enter a similar Agreement with the plaintiff, James W. Simpson." *Findings of Fact, Conclusions of Law* at 5. There was ample reason to reach such conclusion.

In *Lincoln National Life Ins. Co. v. Means,* 264 Ky. 566, 95 S.W.2d 264, 269 (1936), we said:

"[U]pon making a contract for the benefit of a third party, privity between a promisor and a third party beneficiary, necessary to be a binding legal obligation, is created by operation of law, notwithstanding the fact that the primary purpose of the contracting parties was to benefit themselves ...."

In short, all that is necessary is that there be consideration for the agreement flowing to the promisor and that the promisee intends to extract a promise directly benefiting the third party. The circumstances here amply justify this conclusion.

The next question is whether the agreement is unenforceable on grounds such as existed in *Walker v. Keith, supra,* cited in the Court of Appeals' opinion. *Walker* involved an option to renew in a lease, leaving the new rent up to "comparative business conditions" at a later period. The problem was what particular "business conditions" did the term used refer to, and compared to what? In *Walker v. Keith, supra* at 201, we held this was no more than an unenforceable "agreement to agree in the future." This is far different in degree of uncertainty from the present case where the contract obligates JOC Coal Companies to undertake to conclude a similar agreement with James W. Simpson, which is subject to a reasonable interpretation as meaning to make Simpson a similar offer for his shares. The trial court so interpreted the contract and further found that JOC Companies had failed to negotiate in good faith with Simpson, thus breaking their commitment under the agreement. Unlike *Walker,* here the promisor's commitment is sufficiently defined to be enforceable.

Here the trial court could determine value from a contemporaneous, bona fide sale. *Albert v. Black Motor Co.,* Ky., 357 S.W.2d 714, 718 (1962). The trial court was within the evidence and the law in enforcing the obligation imposed upon and assumed by the JOC Companies to make a good faith offer to Simpson for the value of his stock, and in determining that Simpson had an enforceable right to performance. The Court of Appeals erred in finding to the contrary.

Because there were other claims of error made in the Court of Appeals which were not considered when that court decided that the contract was unenforceable, the case is remanded to the Court of Appeals to decide those issues not disposed of by this opinion.

STEPHENS, C.J., and AKER, GANT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents and files a separate opinion.

STEPHENSON, J., not sitting.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent because I believe the Court of Appeals reached the correct result. I would affirm that decision.