James B. Swing, Trustee of the Union Mutual Fire Insurance Company of Cincinnati, Ohio, Appellant, *v.* Edgar Munson.

*Insurance—Police powers—Public policy.*

Statutes merely regulating the methods of conducting the business of insurance, foreign and domestic, are but the exercise of the police power of the state in the interest of the public, and are not unconstitutional.

*Insurance—Foreign corporations—Conditions—Doing business.*

A contract of insurance on property in Pennsylvania, with a foreign insurance company, irrespective of where made, is an attempt to do business in Pennsylvania, so as to be forbidden by the statutes, unless certain conditions are complied with.

A contract of insurance with a foreign corporation, though valid in the foreign state where made, cannot be enforced in Pennsylvania, where the insured property is located, in an action for assessments on premium notes given by the insured, where the company has never complied with any of the conditions prescribed by the Pennsylvania statutes as essential to the making of a lawful contract of insurance; and it is immaterial that the insured has received the benefits of the contract, and that it would be inequitable to permit him to escape payment of his share of the losses.

*Contracts—Illegal contracts—Public policy.*

Courts having in view public interests will not lend their aid to the enforcement of an unlawful contract.

Argued March 13, 1899. Appeal, No. 443, Jan. T., 1898, by plaintiff, from judgment of C. P. Lycoming Co., Sept. T., 1895, No. 102, for defendant non obstante veredicto. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed. MITCHELL, J., dissents.

Assumpsit on premium notes. Before METZGER, P. J.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment for the defendant, non obstante veredicto.

*Clarence E. Sprout*, for appellant.—To preclude a recovery in this case—brought by the trustee of the creditors of the insolvent company—would be to enable this defendant to take advantage " de son tort demesne : " Dettra *v.* Kestner, 147 Pa.

566; Brouwer v. Appleby, 1 Sandf. (N. Y.) 158; Deraismes v. Merchants' Mut. Ins. Co., 1 N. Y. 371.

If a citizen of Pennsylvania has, by a contract, validly made outside of its boundaries, incurred a liability, no law of this state can, under the Constitution of the United States, prevent his fulfilling that obligation, even by an act done within the state: Com. v. Biddle, 139 Pa. 605.

Comity requires us to enforce a contract made in another state, and valid there, unless it is clearly prohibited by some provision of these enactments: Northampton Mut. L. Stock Ins. Co. v. Tuttle, 40 N. J. L. 476; Romaine v. Union Ins. Co., 55 Fed. Rep. 751; Hazeltine v. Mississippi Valley Fire Ins. Co., 55 Fed. Rep. 743; French v. People, 40 Pac. Rep. 463; Hooper v. California, 15 Supreme Ct. Rep. 207.

*Addison Candor*, with him *C. La Rue Munson*, for appellee.— The acts of assembly relating to foreign companies have been declared to be constitutional, and they and similar statutes of other states have uniformly received the approval of the courts: Throne v. Ins. Co., 80 Pa. 28; Traveler's Ins. Co. v. Heath, 95 Pa. 338; List v. Com., 118 Pa. 327; Lasher v. Stimson, 145 Pa. 35; Com. v. Vrooman, 164 Pa. 306; Allgeyer v. Louisiana, 165 U. S. 578; Bank of Augusta v. Earle, 13 Peters (U. S.), 589; Paul v. Virginia, 8 Wallace (U. S.), 168; Cincinnati Mut. Health Assurance Co. v. Rosenthal, 55 Ill. 85; Barker v. Lamb & Sons, 68 N. W. Rep. 686.

A foreign insurance corporation, being amenable to the prohibitions of our acts of assembly, and expressly forbidden thereby from transacting business within the state without express authority, and without compliance with the regulations and conditions imposed by such statutes, cannot, in the absence of such authority and without such compliance, maintain an action in this state on a contract of insurance on property situate therein, no matter whether such contract is made in this state or in the state of the domicil of the corporation: Seamans v. Temple Co., 105 Mich. 400; Stanhilber v. Mut. Mill Ins. Co., 76 Wis. 285; Rose v. Kimberly, 89 Wis. 544; Cowan v. London Assurance Corporation, 73 Miss. 321; Haverhill Insurance Co. v. Prescott, 42 N. H. 547; Claflin v. U. S. Credit System Co.. 165 Mass. 501; Barker v. Lamb & Sons, 68 N. W. Rep.

(Supreme Court of Iowa) 686; Kennebec Co. v. Augusta Ins. and Bkg. Co., 6 Gray, 204; Rising Sun Ins. Co. v. Slaughter, 20 Ind. 520; Beeber v. Walton, 32 Atl. Rep. (Del.) 777; 7 Houst. 471; Buell v. Breese Mill & Grain Co., 65 Ill. App. 271; Seamans v. Christian Bros. Mill Co., 68 N. W. Rep. (Minn.) 1065.

The validity of a contract, even though valid in the state where made, is not to be determined by the lex loci contractus, where there is something in the contract which is deemed hurtful to the good morals or injurious to the rights of its own citizens by the laws of the state whose courts are called upon to enforce the contract, and when such contract is contrary or repugnant to the policy of positive institutions of that state : Robinson v. Queen, 87 Tenn. 445.

OPINION BY MR. JUSTICE DEAN, May 23, 1899:

The appellant Fire Insurance Company was a mutual company organized under the laws of the state of Ohio. The defendant, Edgar Munson, a member of the company, is a resident of Williamsport and a citizen of Pennsylvania. Immediately after the articles of incorporation were filed, on May 27, 1887, in the office of the secretary of the state of Ohio, the company commenced to issue policies of insurance against fire, not only in Ohio but in other states. Before the final certificate dated October 1, 1888, authorizing it to do business, was issued, Munson made application for insurance upon property in Pennsylvania, and in response policies were issued to him on deposit of the proper premium notes. The application and notes were executed at Williamsport and transmitted by mail to the office of the company at Cincinnati, whence was mailed to him the policy. Ostensibly, there was no agent of the company in this state, but before Munson made out and transmitted his application, before he even knew of the existence of the company, one Hotchkin, a resident of Elmira, called upon him in Williamsport, and suggested that he take out policies in the company. It was denied, that Hotchkin was an agent for the company; he was called an inspector, but the testimony of Munson and the correspondence between him and Williams, the secretary, establishes the fact beyond dispute, that he acted for the company in procuring the insurance of Munson's

property in Pennsylvania, although the contract was consummated by direct correspondence between Munson at Williamsport and the officers of the company in Cincinnati. On December 18, 1890, by a judgment of the Supreme Court of Ohio, the corporation was dissolved, and James B. Swing, this appellant, appointed trustee for creditors and members to wind up its affairs. In consequence, there came into his hands nine notes of Munson; three of them were deposit or stock notes, deposited before the certificate of organization was issued, and three of them ordinary premium notes, delivered after the complete organization of the company. All of them, under the statute of Ohio, were subject to assessment for debts of the company. An assessment was regularly made by the trustee; Munson refused to pay, and this suit was brought. At the trial this agreement was filed by counsel:

"It is hereby agreed by and between the plaintiff and defendant in the above entitled case that the following facts are admitted with the force, effect and validity as if the same had been established upon the trial of the cause by competent evidence, viz: That the Union Mutual Fire Insurance Company is a corporation duly organized under the laws of the state of Ohio, and that said insurance company has never complied with any of the requirements of the several statutes of the state of Pennsylvania, obligatory upon insurance companies of other states seeking to transact business in the state of Pennsylvania."

After hearing the evidence, which established the material facts as we have narrated them, Munson's counsel asked the court to direct a verdict for defendant, for, among others, this reason:

"2. It having been admitted that the Union Mutual Fire Insurance Company, never having complied with any of the requirements of the several acts of assembly of the state of Pennsylvania obligatory upon insurance companies of other states seeking to transact business in the state of Pennsylvania, the contract of insurance is invalid and unlawful, and there can be no recovery for any assessments on premium notes given by defendant."

The court reserved its answer to the point, and directed a verdict for plaintiff; afterwards, in opinion filed, it entered judgment for defendant on the point reserved, and we have this appeal by plaintiff.

It is argued, that the contract was made in the state of Ohio; it being valid there, under the constitution of the United States, it is enforceable in Pennsylvania. The evidence does not show that the contract was made in Ohio; to our minds, it shows quite the contrary; the attempt by a pretense to shift the place of the contract to Ohio, to evade the prohibitions of our statutes, is so manifest that it would, perhaps, have warranted a peremptory instruction to the jury to find for defendant on the evidence. But that we may meet a more important question, because it affects the interests of all foreign insurance companies that seek to do business in this state, we prefer to assume that the contract was made in Ohio, and is lawful there. It was a contract, however, in direct violation of the laws of this state; it was the indemnification of a citizen of Pennsylvania against loss by fire on property wholly within Pennsylvania; without regard to where the contract was made, the subject of it was property within this state; it is the attempt of a foreign insurance company to do business in this state in violation of the laws of this state.

Section 9 of the Act of April 4, 1873, P. L. 20, declares that: "It shall be unlawful for any person, company or corporation to negotiate or solicit within this state any contract of insurance, or to effect an insurance or insurances, or pretend to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance without complying fully with the provisions of this act."

The 8th, 10th, 11th and 12th sections prescribe in detail what conditions shall be performed by the foreign company precedent to the transaction of business, and specify penalties for neglect.

Then, the supplement of May 1, 1876, makes it a misdemeanor in any person to act as agent within this state for a foreign company that has not complied with the provisions of the original act. Then follows the act of June 20, 1883, and then that of April 26, 1887, section 1 of which latter act declares: "That any insurance company or association not of this state doing business without authority agreeable to the provisions of this act shall forfeit and pay to the commonwealth the sum of five hundred dollars for each month, or fraction thereof, during each

month, on and after the passage of this act, which such illegal business was transacted, and be prohibited from doing business in this state until such fines are fully paid. And that any person or persons, or any agent, officer or member of any corporation paying, or receiving, or forwarding any premiums, applications for insurance, or in any manner securing, helping or aiding in the placing of any insurance, or effecting any contracts of insurance upon property within this commonwealth, directly or indirectly, with any insurance company or association not of this state, and which has not been authorized to do business in this state under the terms of this act, shall be guilty of a misdemeanor, and, on conviction thereof, shall be sentenced to a fine of not less than one hundred dollars nor more than one thousand dollars, and upon conviction of a second offense shall be sentenced to pay a like fine and undergo an imprisonment not exceeding one year, or either, in the discretion of the court," etc.

All these acts were violated by this appellant corporation; it made no pretense of observing the provisions of any of them. Assume that the contract, because made in Ohio, could have been enforced in the courts of that state, it does not follow that the courts of this state will lend their aid to the enforcement of a contract in violation of its own policy as declared in its laws. If these laws contravene the constitution of the United States or that of Pennsylvania, our courts would enforce the contract, because it would then be lawful here, as in Ohio; but if our statute be constitutional, then the contract is directly opposed to our declared law. There was a time when I doubted the constitutionality of any statute prohibiting the exercise of the common-law right of contract in the individual, as to things not malum in se; but in Commonwealth v. Vrooman, 164 Pa. 306, a majority of this Court, in a very able opinion by our late Brother WILLIAMS, decided otherwise. That case is now the law. It decided that the regulation of the business of insurance might extend so far as to prohibit the citizen from making a contract of indemnity with other than a corporation, without violation of our bill of rights. Certainly, if the freedom of contract could be thus restricted, the legislature could prescribe terms, on observance of which foreign corporations could only do business within the state, so that the constitutionality of

these acts is no longer open for discussion, and it would be a waste of time to again review the cases. The case before us is, as said by the Supreme Court of Wisconsin, Rose v. Kimberly, 89 Wis. 544: "The question arising is not whether these contracts can be enforced in the courts of Illinois where they were made ; the question here presented is, whether the courts of this state will enforce a contract plainly and squarely opposed to the public policy and laws of this state." Our legislature had the constitutional power to enact these statutes ; under them, this contract is unlawful in this state ; shall our courts, by enforcing it, declare it lawful? This would be subversive of the very policy our state had adopted ; it would, as to results, repeal all the statutes regulating contracts with foreign insurance companies. It is argued that Munson had the benefit of this contract of indemnity while the contract was in force, and it is inequitable to permit him to escape payment of his share of the losses. This argument would have weight if the parties alone concerned were Munson and the insurance company ; but, in enforcing a policy in the interests of the whole public, the law takes but little note of the conduct of the immediate parties to the contract ; the rule is, that courts, having in view public interests, will not lend their aid to the enforcement of an unlawful contract: Mitchell v. Smith, 1 Binn. 118; Holt v. Green, 73 Pa. 198; Johnson v. Hulings, 103 Pa. 498, and many other cases. Commonwealth v. Biddle, 139 Pa. 609, is cited by appellant as in conflict with this view ; but appellant misapprehends the scope of the decision when viewed in connection with the facts before the court. That was a criminal prosecution by the commonwealth against the owner of property, for violation of the act of 1887, prohibiting any person from paying or forwarding any premiums or in any way aiding a foreign insurance company to, without authority, do business within this state. It was held that the penal provisions of the act referred to brokers and other agents of foreign companies attempting to do business within the state, and not to owners who executed contracts within the territorial limits of another state. The decision is best illustrated by the language of our Brother MITCHELL in the opinion, thus : "We entertain, therefore, no doubt of the power of the legislature to make the insurance of his property in an unauthorized foreign company by an owner criminal, if

done in this state. But such a statute would be not only an unusual, but a very harsh and extreme interference with the general right of a citizen to manage his private affairs in his own way, and we should not attribute such an intent to the act in question, unless its terms be plain or the implication unavoidable." And then the closing sentence of the opinion is as follows: " And certainly, when we are asked to say that the legislature meant so unusual and extreme an interference with the rights of citizens in the management of their own private affairs, we may demand that such intent shall be shown in clear and unambiguous words." The case pointedly decided, that no indictment, under the ambiguous language of the act of 1887, could be sustained against the owner for a contract of insurance made outside the state. It is true, a doubt as to the constitutionality of the act under the constitution of the United States is suggested, but in Commonwealth v. Vrooman, supra, decided four years later, we held, after the fullest consideration, that statutes merely regulating the methods of conducting the business of insurance, foreign and domestic, were but the exercise of the police power of the state, in the interests of the public and for this, Powell v. Pennsylvania, 127 U. S. 678, Slaughter House Cases, 16 Wall. 36, and others were cited. There is no authority in this state for holding otherwise. We therefore, hold, the court below rightly refused to enforce this contract, because, in making it, the insurance company had not complied with the laws of this state on the subject of insurance of property within the state.

The judgment is affirmed.