## DILLON, READ & CO. v. COMMERCIAL STATE BANK.

### No. 4907.

Circuit Court of Appeals, Third Circuit.

Nov. 29, 1932.

The opinion of Kirkpatrick, District Judge, is as follows:

This was a suit by a brokerage house to recover damages from a state bank of deposit and discount incorporated under the Pennsylvania Act of May 13, 1876, P. L. 161, for breach of a contract to purchase 200 shares at $67 a share of common stock of U. S. & Foreign Securities Corporation, an investment trust. The verdict was for the plaintiff. The verdict of the jury established that the contract to purchase the stock was made for the bank by its cashier, and that the cashier, by reason of a course of dealing between the parties, had implied authority to act for the bank in so doing. Without reviewing the testimony, it will be sufficient to say that these findings are amply supported by competent evidence.

At the close of the testimony, the defendant presented a point requesting the court to charge that, because the bank did not have any corporate authority to purchase shares of stock of a corporation, no authority in the cashier to buy it could be implied, either from a course of dealing or otherwise, which point was refused. The defendant now moves for a new trial on the ground that the contract was ultra vires and no recovery may be had upon it, without regard to the question of the cashier's authority to make it. The submission of this point was the first suggestion in the trial that the defense of ultra vires would be raised. The point does not as a matter of fact directly raise the issue, but it was so understood and was argued as though it did, and, for the purposes of this motion, I hold that the defense has been raised at the trial, although not pleaded.

█ It is conceded that the laws under which the defendant bank was chartered do not give it power to buy and hold common stock of other corporations as an investment. It is further conceded that the purchase of the stock here in question is not properly incidental to or implied from any power expressly granted. The plaintiff's position is that the power to purchase stock was conferred upon the defendant bank by the terms of the Act of July 2, 1901, P. L. 603, which, as amended as to matters not essential to this discussion by the subsequent Acts of March 27, 1929, P. L. 74, and April 18, 1929, P. L. 544, is as follows: "Hereafter any corporation, created by general or special laws, may purchase, hold, sell, assign, transfer, mortgage, pledge, or otherwise dispose of, the shares of the capital stock of, or any bonds, securities or evidences of indebtedness created by, any other corporation or corporations * * * of this or any other State, * * * and while the owner of said stock may exercise all the rights, powers and privileges of ownership, including the right to vote thereon." (15 PS § 661).

A literal reading of the terms of this act would extend it to cover the defendant bank as well as all other corporations. However, I am of the opinion that the Legislature did not so intend, and am led to this conclusion by the following considerations:

First. From the time of the earliest legislation upon the subject down to the present, state banks have been dealt with by the Legislature as a separate and distinct class of corporations. Such banks are not incorporated under the General Incorporation Act of 1874 (P. L. 73), but under the act of 1876 above referred to. The act of 1876 is supplemented by numerous later acts, all of which relate to banking corporations as a distinct class of corporations, and do not provide for business corporations generally.

Secondly. Broad considerations of public policy form the basis for the legislative policy in this respect. Banking corporations are the only important class of corporations which are authorized to invite and receive deposits of money belonging to others from their stockholders and to use such money in their business. Obviously the supervision and regulating of corporations having such powers ought to be, and they are, dealt with by the state under a complete system of legislation applicable to them alone. Thus there is, in the case of banks, more reason for excluding them from apparently inclusive terms of general corporation laws than there is in the case of any other class of business corporations.

█ Thirdly. The Act of July 10, 1901, P. L. 639, passed eight days later by the same Legislature which passed the Act of July 2, upon which the plaintiff relies, carries the unmistakable implication that the Legislature did not intend or understand that the Act of July 2 should apply to banks. The Act of July 10 (as subsequently amended by the Act of July 24, 1913, P. L. 972 [7 PS § 205]) provides that "banks chartered under the provisions of the laws of the Commonwealth of Pennsylvania be, and they are hereby, authorized to * * * invest their funds, not exceeding their time deposits, plus twenty-five per centum of their capital stock, surplus, and undivided profits, in the purchase of * * * mortgages; and may also purchase, for investment, any interest bearing bonds or other obligations of any corporation or individual." If the Act of July 2, 1901, as the plaintiff contends, authorized state banks to purchase and hold shares of stocks, bonds, securities, and evidences of indebtedness of other corporations, there would have been no conceivable need for the last clause of the later act. Legislative intent may often be gathered from other acts in pari materia particularly when passed by the same Legislature. I therefore hold that the Act of July 2, 1901, did not confer upon state banks of discount and deposit the power to buy and hold shares of stock in other corporations, and it follows that the contract upon which the plaintiff sued was ultra vires the defendant.

█ The remaining question is whether the failure of the defendant to plead the defense

precludes it from raising it at the trial. Although there are many jurisdictions in which the rule is otherwise, the decisions of the Supreme Court of the United States, particularly Central Transportation Company v. Pullman's Palace-Car Company, 139 U. S. 24, 11 S. Ct. 478, 488, 35 L. Ed. 55, and the recent decision of the Circuit Court of Appeals for the Third Circuit in Baltimore & Ohio R. R. Co. et al. v. George H. Smith, 56 F.(2d) 799, leave no doubt that, under the rule as adopted by the federal courts, such a contract is wholly void, and cannot, especially when wholly executory as in this case, form the basis of any legal right of action. In the Pullman Case the court said: "A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either." To the same effect is the decision of the Pennsylvania Supreme Court in Fowler v. Scully, 72 Pa. 456, 13 Am. Rep. 699. Failure to plead the defense is at most a waiver, and the corporation cannot by waiver incur a liability which is utterly beyond its power to assume by express agreement. There is more involved here than the mere interposition by a corporation of the defense of ultra vires, which is usually looked upon by the courts with disfavor. Even though not specifically prohibited by law, this contract is in contravention of a sound public policy. Whether it be called an illegal contract, as in Fowler v. Scully, or not, it is to all intents and purposes in the class of illegal contracts so far as rights and remedies based upon it are concerned.

Section 16 of the Pennsylvania Practice Act of 1915 (12 PS § 452) provides in substance that the defendant shall not at the trial be permitted to make any defense which is not set forth in the affidavit of defense. In Brenner v. Pecarsky, 86 Pa. Super. Ct. 414, the court held that this provision of the Practice Act did not apply where the contract sued upon was an unlawful contract. I do not think that the force of that decision is impaired by the fact that the contract in that case was specifically prohibited by statute. The court, quoting Swing v. Munson, 191 Pa. 582, 43 A. 342, 58 L. R. A. 223, 71 Am. St. Rep. 772, said: " * * * In enforcing a

policy in the interests of the whole public, the law takes but little note of the conduct of the immediate parties to the contract; the rule is, that courts, having in view public interests, will not lend their aid to the enforcement of an unlawful contract." The court also said: "All that that provision of the statute means is that a party may not, at the trial, make a defense not pleaded by him. It did not affect the rule that a plaintiff who fails to make out a case cannot recover."

The defendant's sixth point for charge should have been affirmed and the jury directed to render a verdict for the defendant. The motion for a new trial is therefore granted upon the sole ground that under all the evidence of the case the plaintiff was not entitled to the verdict.

Mercer B. Tate, Jr., and C. Brewster Rhoads, both of Philadelphia, Pa. (Montgomery & McCracken, of Philadelphia, Pa., of counsel), for appellant.

C. F. Muehlhoff, of Pottsville, Pa., and John Robert Jones, of Philadelphia, Pa., for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

PER CURIAM.
Affirmed on Judge Kirkpatrick's opinion.