**AMERICAN UNIVERSAL INS. CO. v.
STERLING et al.**

Civ. A. No. 4028.

United States District Court
M. D. Pennsylvania.

April 29, 1952.

Charles H. Welles, III, Scranton, Pa., Sidney N. Zipser, New York City, Paul Green, Philadelphia, Pa., for plaintiff.

Joseph P. Brennan, Scranton, Pa., for defendants.

WATSON, Chief Judge.

This is an action by a fire insurance company organized under the laws of Rhode Island against its assured, who are citizens and residents of Pennsylvania. Plaintiff paid to the defendant Benjamin Sterling, Jr., on behalf of himself and his wife, Mae Sterling, the sum of $30,735 under a policy of fire insurance covering property owned by the defendants in Pennsylvania. The properties covered by the insurance policy were amusement park buildings with equipment. There is some question as to where the policy was issued and delivered, but in considering this motion, it will be assumed that the policy was issued in Rhode Island and delivered in New York as alleged by the plaintiff in its complaint.

Plaintiff, by virtue of its subrogation rights under the contract of insurance, a subrogation receipt and a loan receipt, brought an action in this Court against Nallin-Jennings Park Co., Inc., Civil Action No. 3815,* wherein the plaintiff sought to recover the amount paid by it to the Sterlings from the Nallin-Jennings Park Co., Inc., which owned the property adjoining that of the assured, on the ground that the fire started and later spread to the assured's premises because of negligent acts or omissions on the part of the Nallin-Jennings Park Co., Inc. At the trial of the case, plaintiff insurance company suffered a voluntary dismissal with prejudice.

Plaintiff now brings this action against its assured on the ground that defendants violated the terms of the policy of insurance and subrogation receipt and loan receipt, in that they failed to cooperate with the plaintiff in its aforesaid legal action against Nallin-Jennings Park Co., Inc.

At the trial of the case, after the plaintiff had introduced some testimony, it was stipulated and agreed by counsel for the plaintiff that plaintiff insurance company, at the time it issued the policy to the defendants and at the time this action was commenced, had not complied with the re-

---

* No opinion filed.

quirements of Pennsylvania statutes obligatory upon foreign insurance companies seeking to do business in Pennsylvania. Defendants then filed a written motion to dismiss the action on the ground that this Court has no jurisdiction of the action. This motion was granted and the action was dismissed. This Opinion will set forth the reasons for that dismissal.

■ The case being one which is based upon diversity of citizenship, the law of Pennsylvania controls. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487. In Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, the Supreme Court held that in diversity of citizenship cases the federal courts cannot permit the maintenance of suits to which the state has closed its courts. It, therefore, becomes necessary to determine whether this suit could have been brought in the courts of this Commonwealth.

The leading case in Pennsylvania on the issue presented is that of Swing v. Munson, 1899, 191 Pa. 582, 43 A. 342, 58 L.R.A. 223, wherein the plaintiff was the trustee of the creditors of an insolvent Ohio fire insurance company and the defendant a resident of Pennsylvania. Defendant made application for insurance on his property located in Pennsylvania by mail to the office of the insurance company in Ohio, and the insurance company then mailed a policy to the defendant. Plaintiff later sought to recover assessments on the policy. At the trial it was stipulated that the fire insurance company was an Ohio corporation and did not comply with the Pennsylvania statutes relating to foreign insurance companies seeking to do business in Pennsylvania. There was some question as to whether or not the contract of insurance was made in Pennsylvania or Ohio, but the Supreme Court of

Pennsylvania treated it as being made in Ohio and being lawful there. The Court then held [191 Pa. 582, 43 A. 343]: "It was a contract, however, in direct violation of the laws of this state. It was the indemnification of a citizen of Pennsylvania against loss by fire on property wholly within Pennsylvania. Without regard to where the contract was made, the subject of it was properly within this state. It is the attempt of a foreign insurance company to do business in this state in violation of the laws of this state. * * * We therefore hold the court below rightly refused to enforce this contract, because, in making it, the insurance company had not complied with the laws of this state on the subject of insurance of property within the state." [1]

Plaintiff concedes that if the rule of Swing v. Munson is still the law of Pennsylvania the present action must be dismissed; however, plaintiff contends that in view of changes which have been made in the underlying statute since Swing v. Munson was decided, it no longer expresses the law of Pennsylvania.

The statute which controlled the decision in Swing v. Munson was Section 9 of the Act of April 4, 1873, P.L. 20.[2] A similar provision is contained in the Insurance Department Act of 1921, P.L. 789, Art. I, Section 106, 40 P.S. § 26, which reads as follows:

"It shall be unlawful for any person, company, association, exchange, copartnership, or corporation to negotiate or solicit, within this Commonwealth, any contract of insurance, or to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance, with-

---

1. Also see Commonwealth Mutual Fire Insurance Co. v. Sharpless Bros., 1900, 12 Pa.Super. 333, which overruled Western Massachusetts Mutual Fire Insurance Co. v. Girard Point Storage Co., 1898, 6 Pa.Super. 288; Employers Mutual Insurance & Service Co. v. Pakradooni, 1925, 84 Pa.Super. 532.

2. The Court also referred to Sections 8, 10, 11 and 12 of the Act which prescribe the conditions to be performed by a foreign insurance company precedent to the transaction of business and specify penalties for neglect. The Court also cited the Act of May 1, 1876, the Act of June 20, 1883, and the Act of April 26, 1887, which provide criminal penalties.

out fully complying with the provisions of this act." [3]

Despite the substantial reenactment of the provisions of the Act of 1873 into the Act of 1921 as set forth above, plaintiff contends that the rule of law set out in Swing v. Munson is no longer the law of Pennsylvania, because the Act of 1921 contains further provisions whereby foreign insurance companies not authorized to do business in Pennsylvania may write policies in this state under certain conditions. More specifically, plaintiff refers to Sections 624-625 of the Act of 1921, as amended by the Act of 1947, July 5, P.L. 1296, Section 1, 40 P.S. §§ 254 and 255, which sections apply to excess insurance brokers. These sections provide that properly licensed brokers may place insurance with foreign insurance companies not authorized to do business in this Commonwealth, provided the broker files an affidavit that he has been unable to procure the required insurance from insurance companies authorized to do business in this Commonwealth, and provided further that each policy so written shall have written or printed on the outside of it the name of the licensed broker who obtained it and the words "licensed excess insurance broker" immediately after his name.

The complaint makes no allegation that this was an excess insurance contract, nor does the policy contain the name of the "licensed excess insurance broker" as required by the Act. Furthermore, it cannot be said that this provision for the placing of excess insurance with foreign unauthorized insurance companies changes the policy of the Act of 1873, which was to protect the citizens and property owners of Pennsylvania against irresponsible foreign insurance companies. The Legislature merely recognized the fact that in some instances the required fire insurance cannot be secured from companies authorized to do business in Pennsylvania, and therefore established a procedure for placing such insurance. It is apparent from the exacting requirements placed upon the writing of excess insurance policies that the Legislature was intent on protecting the residents of Pennsylvania and at the same time allow them to receive fire insurance protection in such a situation. In doing so, it is clear that the Legislature did not intend to change the law as expressed by the case of Swing v. Munson.

Plaintiff further contends that Swing v. Munson no longer represents the law of Pennsylvania because of statutory provisions contained in the Unauthorized Insurer's Process Act of 1949.[4] This statute provides a method of substituted service of process upon unauthorized insurance companies who (1) Issue or deliver contracts of insurance to residents of Pennsylvania; (2) Solicit applications for contracts of insurance; (3) Collect premiums; or (4) Perform any other transaction of insurance business. Plaintiff contends that it did none of these acts and therefore was not doing business in Pennsylvania as defined in this Act. A question arises as to whether or not plaintiff's acts did not come within the provision "any other transaction of insurance business", but this Court need not decide that question for the Act clearly does not change the policy enunciated in Swing v. Munson. The Act defines what constitutes doing business by a foreign insurance company merely for the purpose of securing effective service of process upon a non-registered foreign insurance company. It does not attempt to change the test announced in Swing v. Munson as to what constitutes doing business by a foreign insurance company in this state when the insurance company is charged with having violated the laws of this state regulating foreign insurance companies. The Act further emphasizes the intent of the Legislature to provide added protection to residents of Pennsylvania against non-registered foreign insurance companies. This is borne

3. Also see Act of 1921, P.L. 682, Art. III, section 301, 40 P.S. § 421; and Art. V, Sections 501–503, 40 P.S. §§ 631-633, for conditions to be performed by foreign insurance companies precedent to transaction of business. Also see Act of 1921

as amended by the Act of 1931, June 23, P.L. 904, Section 1, 40 P.S. § 634, for provision as to penalties.

4. 1949, May 20, P.L. 1491, Sections 1–6, 40 P.S. §§ 1005.1–1005.6.

out by Section 1 of the Act, which reads as follows:

"The purpose of this act is to subject certain insurers to the jurisdiction of courts of this State in suits by or on behalf of insureds or beneficiaries under insurance contracts. The legislature declares that it is a subject of concern that many residents of this State hold policies of insurance issued or delivered in this State by insurers not authorized to do business in this State, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such State interest the Legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define for the purpose of this statute what constitutes doing business in this State, and also exercises powers and privileges available to the State by virtue of Public Law 15, 79th Congress of the United States, Chapter 20, first Sess. S. 340, as amended, which declares that the business of insurance and every person engaged therein shall be subject to the laws of the several states."

Plaintiff calls attention to the fact that Swing v. Munson was decided at a time when the business of insurance was not considered commerce, but looked upon merely as a contract of indemnity and not protected as interstate commerce. In United States v. South-Eastern Underwriters Association, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, the Supreme Court declared that the business of insurance conducted across state lines is interstate commerce, and therefore plaintiff contends that the laws of Pennsylvania can no longer declare a policy of fire insurance executed outside the state of Pennsylvania invalid and against public policy, even though it covers property located within the state of Pennsylvania and the foreign insurance company does not comply

with the Pennsylvania statutes regulating foreign insurance companies.

After the decision in the South-Eastern case, the state systems for regulating and taxing foreign insurance companies were subject to attack under the commerce clause, and, therefore, in 1945 Congress passed the McCarran Act [5] in order to sustain the state systems from such attack. The pertinent portion of the Act reads as follows:

"Sec. 1. Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"Sec. 2. (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance * * *."

In Prudential Insurance Co. v. Benjamin, 1946, 328 U.S. 408, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342, the Supreme Court considered the effect of the South-Eastern decision upon a South Carolina statute which imposed a tax upon foreign insurance companies, and upheld the validity of the statute. The Supreme Court based its decision on the McCarran Act and in the course of its opinion stated:

"Obviously Congress' purpose was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance. This was done in two ways. One was by removing obstructions which might

5. Act of March 9, 1945, c. 20, Sections 1–2, 59 Stat. 33, 34, as amended July 25, 1947, c. 326, 61 Stat. 448, 15 U.S.C.A. §§ 1011–1015.

be thought to flow from its own power, whether dormant or exercised, except as otherwise expressly provided in the Act itself or in future legislation. The other was by declaring expressly and affirmatively that continued state regulation and taxation of this business is in the public interest and that the business and all who engage in it 'shall be subject to' the laws of the several states in these respects."

In view of all these considerations, this Court finds that the underlying policy of the Act of 1873, to protect the citizens and property owners of this Commonwealth against irresponsible foreign insurance companies, continues to prevail in the Pennsylvania statutes now in force. The Court concludes that the rule of law announced by the Pennsylvania Supreme Court in Swing v. Munson is still the law of Pennsylvania today, and a decision of the highest court of the state construing a state statute regulating foreign corporations doing business within the state is binding on the federal tribunals. Buffalo Refrigerating Machine Co. v. Penn Heat & Power Co., 3 Cir., 1910, 178 F. 696.

It is immaterial to the issue at hand whether or not the plaintiff insurance company is a responsible and reputable foreign insurance company, or whether or not there is any merit in plaintiff's claim as set forth in its complaint, for in enforcing a policy in the interest of the whole public, as the Pennsylvania Supreme Court stated in Swing v. Munson, the law takes but little note of the conduct of the immediate parties to the contract; the rule is, that courts, having in view public interests, will not lend their aid to the enforcement of an unlawful contract.

In conclusion, the Court finds that this action could not have been maintained in the courts of this Commonwealth; it follows that the doors of this Court must also be closed to the plaintiff.

An appropriate order granting defendants' motion to dismiss was heretofore filed.