**AMERICAN UNIVERSAL INS. CO. v. STERLING et al.**

No. 10798.

United States Court of Appeals Third Circuit.

Argued Dec. 5, 1952.

Decided March 20, 1953.

Paul Green, Philadelphia, Pa., Sidney Zipser, New York City (Charles H. Welles, Scranton, Pa., on the brief), for appellant.

Joseph P. Brennan, Scranton, Pa., for appellees.

Before BIGGS, Chief Judge, and MARIS and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

The appellant, American Universal Insurance Company, a Rhode Island corporation, brought suit in the court below against the Sterlings to recover $30,735 paid by American to the Sterlings under an insurance contract issued by American on the Sterlings' amusement park located in Pennsylvania.

American charges that the Sterlings violated certain provisions of the insurance contract, of a subrogation receipt and of a loan receipt. These provisions required the cooperation of the Sterlings in the prosecution of an action brought by American against a third party, a next-door neighbor, Nallinger-Jenning Park Company, Inc., which it had sought, unsuccessfully, to hold liable for the loss covered by the insurance. Alleging the Sterlings failure to cooperate, American also asked for $2,209.56 in expenses incurred by it in prosecuting the action against Nallinger. On the second day of the trial the Sterlings moved to dismiss the complaint on the ground that the court lacked jurisdiction over the action in that American admitted that it had not been registered or licensed to do business in Pennsylvania as required by the Pennsylvania statute applicable to foreign insurance companies. The court below granted the motion, 104 F.Supp. 478, 479, and American has appealed.

■ Jurisdiction is based on diversity of citizenship, and Pennsylvania law therefore controls. The Sterlings' motion asserted that the established policy of Pennsylvania is that suits on insurance contracts issued to Pennsylvania citizens on property within the State by foreign companies which have *not* complied with the State statute cannot be maintained in the courts of Pennsylvania. If this is the law of Pennsylvania, such actions may not be maintained in the federal courts of the State. See Woods v. Interstate Realty Co., 1949, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524. Before examining this assertion, however, it is necessary first to inquire whether American is in fact suing on the insurance contract or is relying on some other basis of recovery. Only if the suit involves the contract can the policy expressed by the Pennsylvania insurance statute be deemed to be relevant.

■ We think it plain that American's action is based on the insurance contract. Paragraph 17 of the complaint sets out the obligations imposed by the contract and by the subrogation receipt and the loan receipt issued thereunder. Paragraph 18 specifies the respects in which the Sterlings failed to discharge their obligations. Paragraphs 19 and 20 recite that the Sterlings' acts and omissions in violation of the duty of cooperation imposed by the subrogation receipt and loan receipt caused damage to American in the amount of $32,944.56.

We note also, if further support for our conclusion be needed, that each informal

restatement by American of its cause of action, e.g., in opening its case to the jury, and in its summary of the facts in its brief on appeal, sounds in contract. We are of the opinion, therefore, that any discussion of the equitable nature of American's right of subrogation would be beside the point, and that we must determine the present policy of Pennsylvania regarding actions such as American's.

The Sterlings cite Swing v. Munson, 1899, 191 Pa. 582, 43 A. 342, 343, 58 L.R.A. 223, for its statement of the Pennsylvania policy as laid down by the Supreme Court of Pennsylvania in respect to actions brought by foreign insurance companies in the Commonwealth's courts. In Swing an action was brought by an Ohio insurance company against a Pennsylvania citizen to recover assessments on an insurance contract. It was stipulated that the Ohio company had not complied with the Pennsylvania insurance statutes, but the court assumed that the insurance contract, applied for and received by mail, had been made in Ohio and was lawful there. The Supreme Court of Pennsylvania nevertheless affirmed the decision of the court below that the contract could not be enforced in the Pennsylvania courts. Three factors were stressed: the failure to comply with the Pennsylvania statute; the Pennsylvania citizenship of the defendant; and the location within the Commonwealth of the insured property. The Supreme Court concluded that the writing of the insurance contract, although accomplished in Ohio, was "the attempt of a foreign insurance company to do business in this state in violation of the laws of this state." The statute involved in Swing v. Munson was Section 9 of the Act of April 4, 1873, P.L. 20. The most recent reenactment[1] of this section makes no change important here.

American concedes that if Swing v. Munson is still the law of Pennsylvania, its complaint was properly dismissed, unless it can bring itself within some exception to the rule requiring foreign insurance companies to comply with the insurance statute. But American contends that changes in sections of the insurance statute, other than that section which was before the court in Swing v. Munson, imply a change in the rule of that case. The present law[2] provides that properly licensed brokers may place insurance with foreign insurance companies not authorized to do business in Pennsylvania, provided the broker files an affidavit that he has been unable to procure the required insurance from insurance companies authorized to do business in Pennsylvania. The statute further provides that each insurance contract so written shall have written or printed on the outside of it the name of the licensed broker who obtained it and the words "licensed excess insurance broker" immediately after the name.

■ We cannot agree with American that these provisions reflect a change in the law as laid down in Swing v. Munson. We adopt the reasoning of the court below that the Pennsylvania legislature was merely opening to Pennsylvania citizens a further channel through which they might procure needed insurance, and was doing so without lessening the protection afforded them against unscrupulous foreign insurance companies as declared in the Swing case. It should be noted that the legislature nowhere expressly altered the determination of this policy by the Supreme Court of Pennsylvania. We should not do so where the new provisions are not necessarily inconsistent with the old view. It should be observed that there is no case which weakens the authority of Swing v. Munson. On

1. Insurance Department Act of May 17, 1921, P.L. 789, § 106, 40 P.S.Pa. § 26:

"It shall be unlawful for any person, company, association, exchange, copartnership, or corporation to negotiate or solicit, within this Commonwealth, any contract of insurance, or to effect the same, or to receive and transmit any offer or offers of insurance, or receive or

deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance, without fully complying with the provisions of this act."

2. Act of May 17, 1921, P.L. 789, §§ 624–625, as amended by the Act of July 5, 1947, P.L. 1296, § 1, 40 P.S.Pa. §§ 254–255.

the contrary, the decision has been occasionally followed[3] and often cited for an anology,[4] presumably with the understanding that its force continues unabated.

■ American also calls attention to the Unauthorized Insurer's Process Act of 1949,[5] providing a method of substituted service of process upon unauthorized insurance companies who (1) issue or deliver contracts of insurance to residents of Pennsylvania; (2) solicit applications for contracts of insurance; (3) collect premiums; or (4) perform any other transaction of insurance business, within the Commonwealth. American alleges in the complaint, and for the purposes of the Sterlings' motion we must assume it to be true, that the insurance contract here involved was issued in Rhode Island and delivered to the Sterlings in New York. American contends, therefore, that it was not doing business in Pennsylvania as defined in the Pennsylvania Act. We again agree with the court below that, even granting American's contention, American still was "doing business" in Pennsylvania within the purview of the Swing case. We conclude that the reach of Swing v. Munson was not changed by a statute the effect of which was only to make it easier for Pennsylvania citizens to get jurisdiction over foreign insurance companies not authorized to do business in the Commonwealth.[6] American cannot dispute the facts that the Sterlings were citizens of Pennsylvania and that the insured property was located within the Commonwealth. These factors are sufficient under Swing v. Munson to have required American to comply with the Pennsylvania insurance statute, and presently to deny it access to the Pennsylvania courts since there has been no compliance as required by law. It is clear, therefore, that on the present pleading, and from the evidence so far presented, American is not entitled to maintain its suit.

■ We also consider without merit the plaintiff's contention that United States v. South-Eastern Underwriters Association, 1943, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, declaring that insurance business conducted across state lines is interstate commerce and is protected as such from state regulation, has invalidated the Pennsylvania public policy expressed in the Swing case. The McCarran Act[7] changed the rule of that case and upheld existing and future state systems for regulating the business of insurance. See also Prudential Insurance Co. v. Benjamin, 1946, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342. We conclude that Swing v. Munson is the law of Pennsylvania today.

A further and important point remains to be considered, however. At the trial in the court below, which lasted but one day

---

3. Commonwealth Mutual Insurance Co. v. Sharpless Bros., 1900, 12 Pa.Super. 333; Employers Mutual Insurance & Service Co. v. Pakradooni, 1925, 84 Pa.Super. 532.

4. See, e.g., Bollinger Co. v. Widmann Brewing Co., 1940, 339 Pa. 289, 294, 14 A.2d 81, 84; Keehn v. Brady Transfer & Storage Co., 7 Cir., 1947, 159 F.2d 383, 387, 170 A.L.R. 999.

5. Act of May 20, 1949, P.L. 1491, 40 P.S. Pa. §§ 1005.1–1005.6.

6. The intent of the legislature to provide added protection to residents of Pennsylvania against non-registered foreign insurance companies appears in Section 1 of the Act which states:
"The purpose of this act is to subject certain insurers to the jurisdiction of courts of this State in suits by or on behalf of insureds or beneficiaries under insurance contracts. The legislature declares that it is a subject of concern that many residents of this State hold policies of insurance issued or delivered in this State by insurers not authorized to do business in this State, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies. In furtherance of such State interest the Legislature herein provides a method of substituted service of process upon such insurers and declares that in so doing it exercises its power to protect its residents and to define for the purpose of this statute what constitutes doing business in this State, * * *."
The statutory definition of doing business is not exclusive but is for the purpose of this statute only.

7. Act of March 9, 1945, 59 Stat. 33, as amended, 15 U.S.C.A. §§ 1011–1015.

before the motion to dismiss was ruled upon, American made a further argument in opposition to the Sterlings' motion to dismiss the complaint. American's counsel there stated: "I would like to get one statement in the record, namely, that we are prepared to prove that this [contract] was excess insurance, the type [which] could not be obtained from a licensed company. In fact, that is the business that this company does, not only insuring property in this state but throughout the country. Furthermore, I would like to state that under that section of the Act[8] the broker is the one that Pennsylvania imposes the sanctions on, not the company. They are entitled to do that business. The control in Pennsylvania is through the broker; no prohibition against the company." The Sterlings' counsel answered that "There is no allegation whatever that this is excess insurance on real estate." American's counsel replied: "There does not have to be." The Judge closed the hearing without comment or ruling on this point.

■■■ It is clear that if this insurance contract represented excess insurance, taken out in accordance with the provisions of the insurance statute requiring the broker to make an affidavit of inability to procure the insurance from companies registered in Pennsylvania and requiring the insurance contract to identify the broker as a "licensed excess insurance broker", the contract would be a lawful one in Pennsylvania. American would be entitled to maintain its suit without showing further compliance with the insurance statute. It is less clear that, even if it be assumed that the contract was one for excess insurance, American could maintain its action where, as seems to be the case here, these formalities were not observed. The requirements and sanctions of the excess insurance provisions are apparently directed to the insurance broker and not to the company with which he deals, but it is a question of state law whether the broker's failure to comply with these provisions bars the insurance

company from suing on the contract in Pennsylvania.

The court below did not meet this question. Ruling against American on the motion to dismiss, it did not credit American's statement, which was in effect an offer of proof. The court below merely noted in its opinion American's failure to plead that the contract was one for excess insurance and the absence from the contract of the broker's name followed by the designation "licensed insurance broker" and the broker's affidavit.

■■ Questions here presented are of procedure, pleading and jurisdiction. There was in the instant case a failure to state a claim on the face of the complaint on which relief could be granted. See F.R. C.P., Rules 8(a) (2) and 12(b) (6), 28 U.S.C. The defendants' motion to dismiss was granted on the ground that the plaintiff had failed to give a statement of the grounds upon which the court's jurisdiction depended. See F.R.C.P., Rule 8(a) (1). Cf. Woods v. Interstate Realty Co., supra. We are of the opinion that all defects of procedure and pleading as well as of jurisdiction can be cured here by a simple amendment of the complaint and that extended comment, including discussion of any conceivable constitutional issue, would be out of place. See Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 132, 67 S.Ct. 231, 91 L.Ed. 128.

Had the complaint contained allegations respecting excess insurance provisions it would have stated a cause of action upon which relief could be granted and would have given a basis for the exercise of jurisdiction by the court below. But American's failure to include these allegations in the complaint did not warrant the dismissal of its claim under the circumstances here presented. American made an offer of evidence in the court below which, if based upon a proffered amendment, should have been granted by the court below in the proper exercise of its legal discretion. See F.R.C.P., Rule 15(b).[9] Although

8. As cited in note 2, supra.

9. F.R.C.P., Rule 15(b) provides in pertinent part, "If evidence is objected to at

the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the

American did not request an opportunity to amend, it failed to do so because, as it stated before the court, it considered an amendment unnecessary. The court below withheld its ruling on the offer made by American until the filing of its final decision.

We are of the opinion that American's offer, if not acceptable to the court without the proffer of an amendment, should have been the subject of a ruling by the court which would have brought the necessity for an amendment to counsel's attention. Trial in the courts of the United States has gone beyond the point where the trial judge is a mere referee. He sits to facilitate the ends of justice.

As to the jurisdictional aspect of American's failure to plead the excess insurance provisions, Section 1653, Title 28 U.S.C., provides that "Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." We think this supports our conclusion above that the trial court should now give American the opportunity to amend. It would seem from the record that to allow the necessary amendment will not now prejudice the Sterlings. American was entitled to prove its claim, if in fact it possessed a meritorious claim. As to this and as to any possible prejudice we, of course, presently express no opinion.

All questions presented upon the remand, however, will be disposed of by the court below as the facts and the law require. Nor do we now decide any questions respecting the statutes of limitations if they be raised, or whether the failure of an insurance broker to comply with the excess insurance provisions required by the law of Pennsylvania in connection with the writing of a policy of insurance by an out-of-state company not qualified to do business in the Commonwealth, may or may not be imputed to the insurer. This is, of course, a question of state law and our research has disclosed no decision in point. We are entitled to the views of the court below on this issue provided it can be prop-

erly formed under the evidence after suitable amendment by American. To pass upon these issues now would be premature and our opinion would be purely advisory.

We remark that the difficulties presented in the trial and disposition of this case would have been obviated by the employment of adequate pretrial procedures.

Accordingly, the judgment of the court below will be vacated and the cause will be remanded with directions to proceed in accordance with this opinion.

presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that

the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."