## Doing Business

MICHAEL J. STACK, JR., Deputy Attorney General, and ANNE X. ALPERN, Attorney General, May 3, 1960. —You have asked whether a State of Delaware life

insurance company which lists its principal office in Pennsylvania and engages in the single activity of receiving and investing the proceeds of a single "reinsurance treaty" relating to credit life insurance risks assumed in Pennsylvania, which activity represents 100 percent of the insurance written by said out-of-State company, is engaging in such activity as to require its being licensed by the Insurance Department of the Commonwealth of Pennsylvania and subject to the taxing provisions governing insurance companies in the Commonwealth.

The answer to both of these questions is "Yes".

The facts which you have supplied indicate this insurance company is a satellite of a loan company. The loan company through numerous branches located in southeastern Pennsylvania requires the borrower as additional security for its loans to insure his life in the amount of the loan for the term of the loan naming the finance company as beneficiary. All of these policies are written with an Illinois insurance company which is authorized to conduct insurance activities in the State of Pennsylvania. The insurance in the first instant is taken by application to the employes of the finance company who have insurance agents' licenses and are authorized to represent the Illinois company. All of this insurance then becomes the subject of a "reinsurance treaty" between the Illinois insurance company and the Delaware insurance company, whereunder the risks written by the Illinois company are ceded to and assumed by the Delaware company.

The treaty was executed by the Delaware company at Philadelphia and later by the Illinois company in Illinois. The Illinois company pays a reinsurance premium to the Delaware company. The Delaware company does not pay the losses on risks it reinsures. That is done by the Illinois company which reimburses

itself by deducting the aggregate monthly amount of such loss payments from the monthly reinsurance premium due to the Delaware company. It remits only the net insurance premium. The Illinois company prepares a monthly statement of reinsurance premium due and losses paid and sends it to the Delaware office of the Delaware company, which is apparently the only other office the company maintains, and a copy, accompanied by its check for the net amount due, to Philadelphia.

Both the Delaware insurance company and the finance company are, for the most part, in effect, beneficially owned by an individual Pennsylvania resident who is a director and president of both corporations and, for practical purposes, controls both.

The Delaware corporation has its own stationery which bears the address of the Pennsylvania resident referred to above. The company maintains a bank account in Philadelphia from which disbursements for routine and minor expenses of the company are paid. The company has no employes other than its three officers, one of whom is the wife of the Pennsylvania resident referred to above. These officers receive "nominal salaries". The Delaware company invests the proceeds of its "reinsurance treaty" in marketable securities, presumably through the Pennsylvania address. The company has made advances to the individual Pennsylvania resident, taking back from him two mortgages, one of which is secured by his residence in Pennsylvania and the other by his summer home in New Jersey. The payments in reduction of the two mortgages are paid into the bank account of the company. This bank account, presumably in Pennsylvania, is in a "street name" partnership which also holds title to the company's funds and investments. The receipt and investment of the net reinsurance premiums and the assumption of obligations under the "reinsurance

treaty" are stated to be the substance of the Delaware company's activities.

These above facts lead us unequivocally to the conclusion that the Delaware corporation is "doing business" within the Commonwealth of Pennsylvania for the purposes not only of court jurisdiction over it but also for taxing and regulatory purposes.

The rule of law in this area is set forth in 29 Am. Jur. §68, p. 485 (edit. 1960), as follows:

"It has been stated broadly that the power of a state to regulate the activities of an insurance company, upon the ground that it is doing business in the state, is to be resolved by the application, not solely of conceptualistic theories of the place of contracting or of performance, but also of the realistic considerations arising from the substantial interest of the state in the business of insuring its people or property, such as considerations of the location of the insurance activity before and after the making of the contract, the degree of interest of the state in the object insured, and the location of the properties insured. It has been said in this connection that particular activities of foreign insurance corporations must be judged as a whole, and that the fact that none of the several acts or transactions, considered separately, constitute doing business, is not necessarily conclusive that a combination of such acts or transactions also will not constitute doing business." See also Annotation, What constitutes doing business within state by foreign insurance corporation, 137 A. L. R. 1128, and Annotation, foreign insurance company as subject to service of process in action on policy, 44 A. L. R. 2d 416.

In the 11 cases headed by Connecticut Mutual Life Insurance Company v. Spratley, 172 U. S. 602, 43 L. Ed. 569, 19 S. Ct. 308 (1899), found at 137 A. L. R. 1139, where a foreign insurer was held to be doing business within another State, the fact that it collected

premiums in the State seeking to assert jurisdiction over it was a factor weighed by the court in reaching its decision. A foreign company which, through its agents, invests funds in obligations secured by mortgages on property within the State has been held to be doing business within such State: John Hancock Mutual Life Insurance Company v. Girard, 57 Idaho 198, 64 P. 2d 254 (1937). In State Life Insurance Company v. Dupre, 19 Tenn. App. 301, 86 S. W. 2d 894 (1935), the making of loans in a State through an agent by a foreign insurance company was held to be doing business within the State. There an Indiana insurance company brought suit to set aside a release on a trust deed, given as security for two promissory notes evidencing loans made through its agent in Tennessee. The court dismissed the bill for failure of the insurance company to be licensed in the State.

While the single act of negotiation outside the State of a contract of reinsurance is not doing business in the State where the insured property is situated and the original risk was assumed (Morris & Company v. Skandinavia Insurance Company, 279 U. S. 405, 73 L. Ed. 762, 49 S. Ct. 360 (1929)), the assumption by a foreign insurer of liability under a policy issued by a domestic insurer or by an insurer qualified to do business in the forum is a factor tending to show that the foreign insurer has subjected itself to the jurisdiction of the State for purposes of suit against the latter upon the policy: North American Union v. Oliphint, 141 Ark. 346, 217 S. W. 1 (1919), and cases cited at 44 A. L. R. 2d 444.

However, the making of a contract of coinsurance also referred to in the opinion as a contract of reinsurance by a foreign insurance corporation, and its delivery for its signature to the coinsurer in the State in which it later was incorporated and its presentation to the insurance commissioner for his approval, and

the carrying out of such contract in the latter State was held to constitute engaging in business in such State within the generally accepted meaning of the term: Lincoln Nat. Life Ins. Co. v. Means, 264 Ky. 566, 95 S. W. 2d 264, cert. den., 299 U. S. 578, 81 L. Ed. 426, 57 S. Ct. 42 (1936). In this case deputized service was held proper.

In Swing v. Munson, 191 Pa. 582, 43 Atl. 342, 343, 58 L. R. A. 223 (1899), an action was brought by an Ohio insurance company against a Pennsylvania citizen to recover assessments on an insurance contract. It was stipulated that the Ohio company had not complied with the Pennsylvania insurance statutes but the court assumed that the insurance contract applied for and received by mail had been made in Ohio and was lawful here. The Supreme Court affirmed the court below, holding the contract could not be enforced in Pennsylvania. Three factors were stressed: The failure to comply with the Pennsylvania statutes; the Pennsylvania citizenship of defendant; the location within the Commonwealth of the insured property. The Supreme Court concluded that the writing of the insurance contract, although accomplished in Ohio, was "the attempt of a foreign insurance company to do business in this state in violation of the law of this state." The statute involved in Swing v. Munson was section 9 of the Act of April 4, 1873, P. L. 20, which has been reënacted as follows in The Insurance Department Act of May 17, 1921, P. L. 789, sec. 106, 40 PS §26:

"It shall be unlawful for any person, company, association, exchange, copartnership, or corporation to negotiate or solicit, within this Commonwealth, any contract of insurance, or to effect the same, or to receive and transmit any offer or offers of insurance, or receive or deliver a policy or policies of insurance, or in any manner to aid in the transaction of the business of insurance, without fully complying with the provi-

sions of this act." To the same effect American Universal Ins. Co. v. Sterling, 203 F. 2d 159 (C. A. 3rd 1953), from which much of the language of the above case is paraphrased.

In Bartlett v. Rothschild, 214 Pa. 421, 63 Atl. 1030 (1906), reversed on other grounds, an action was commenced against the resident agent of a Delaware insurance company not authorized to do business in Pennsylvania under a statute imposing personal liability on the agent for losses on contracts placed through him on behalf of foreign companies not authorized to do business in Pennsylvania. The case held the following to be sufficient facts to show the company was doing business in Pennsylvania:

1. Negotiation for the policy in Pennsylvania.

2. Receipt of the check for the premiums due in Pennsylvania.

3. Location of the insureds and the insured property in Pennsylvania.

4. Transaction of nearly all its business in the agent's office in Pennsylvania.

5. The agent was in point of fact owner of the Delaware Company.

In most of the above-cited cases the contracts which the foreign insurance company had with the State seeking to regulate, tax or subject it to the jurisdiction of the court, were less substantial than those here before us. This fact makes the result here reached even clearer.

The Insurance Company Law of May 17, 1921, P. L. 682, sec. 319, 40 PS §442, provides, in part:

"(b) Any domestic or foreign . . . insurance company, . . . authorized to transact business in this Commonwealth, may reinsure all or any part of its liability . . . with any . . . insurance company, . . . doing the same or a similar kind of business, . . . if such company, . . . is and remains of the same stand-

ard of solvency and other requirements fixed by the laws of this Commonwealth for companies, . . . transacting the same classes of business within this Commonwealth. . . ."

Although the assuming company need not be authorized to do business within the Commonwealth, the insurance commissioner would be better able to ascertain the solvency and other requirements fixed by the laws of this Commonwealth for companies if the companies were actually subject to regulation by the insurance commissioner. Particularly is this true when, as in this case, most of the insured primarily involved are Pennsylvania citizens. Holding this company subject to regulation by your department furthers the policy of our law to supervise the insurance carried on by foreign insurance companies.

The Act of June 1, 1889, P. L. 420, 72 PS §2261, as amended, imposes a tax on the gross premiums received by out-of-State companies from business done within this Commonwealth. It provides:

". . . hereafter the annual tax upon premiums of insurance companies of other states or foreign governments shall be at the rate of two per centum upon the gross premiums of every character and description received from business done within this Commonwealth. . . ."

It is manifest that the company is subject to its provisions.

It is our opinion, and you are so advised, that the Delaware insurance company referred to in your memorandum request of recent date is subject to regulation by the Insurance Department and must meet the licensing and other requirements of the several acts relating to insurance companies. It is also subject to the various taxing provisions of the Commonwealth which apply to corporations doing business within the Commonwealth of Pennsylvania.